## *Ex parte* YUNG JON.

*(District Court, D. Oregon.   August 14, 1886.)*

1. OPIUM—ILLEGAL SALE—CONSTITUTIONAL LAW—TITLE AND SUBJECT OF ACT.
    The subject of an act which forbids the sale or gift of opium to any one but a druggist or practicing physician, except on the prescription of a practicing physician, is sufficiently expressed in the following title: "An act to regulate the sale of opium, and suppress opium dens."

2. SAME—EFFECT OF ACT.
    Such act does not prohibit the disposition of opium, and thereby destroy its value as a medicinal agent, that being the only use of the drug which is generally considered proper in this country.

Petition for a Writ of *Habeas Corpus.*
*Edward B. Watson,* for petitioner.

*G. C. Israel* and *W. Scott Beebe*, for the State.

DEADY, J.   This is an application for a writ of *habeas corpus.*
The petitioner is a subject of the emperor of China, and a resident
of this state.   It appears from the petition that the petitioner is con-
fined in the penitentiary of the state, in pursuance and satisfaction
of a sentence and judgment of the state circuit court for the county of
Baker, for the alleged crime of selling and giving away opium to one
B. F. Caldwell, in violation of section 1 of the act of November 25,
1885, (Sess. Laws, 33,) entitled "An act to regulate the sale of opium,
and to suppress opium dens," which is alleged to be null and void
because (1) the provisions thereof relate wholly to a subject not ex-
pressed in the title of the act; and (2) it deprives persons of their
property in opium without compensation, and without due process of
law, contrary to the constitution of both the state and the United
States.   It is also alleged in the petition that at the passage of this
act the opium in question was a part of a large amount owned by the
petitioner and others, within the state, for the purpose of being sold
at retail therein as merchandise, for which purpose it was and is of
great value; and that by the operation of said section the sale of said
opium as ordinary merchandise is prevented, and its value greatly
diminished.   On the filing of the petition the court directed that no-
tice of the application be given to the prosecuting attorney for Baker
county, who appeared and was heard in opposition thereto.

The law of the United States governing the procedure by *habeas
corpus* is set forth by sections 751 to 766 of the Revised Statutes,
and the cases in which this court may issue the writ are prescribed
in section 753.   The provision in that section, under which it is
claimed this court has jurisdiction to issue the writ in this case, is as
follows: "The writ of *habeas corpus* shall in no case extend to a pris-
oner in jail, unless when he   *   *   *   is in custody in violation of
the constitution, or a law or treaty of the United States."   If this
section of this act is void for any reason, of course the petitioner is
deprived of his liberty without due process of law, contrary to the
fourteenth amendment; and this court has power to deliver him from
the restraint complained of.   *Ex parte Wan Yin,* 10 Sawy. 538; S.
C. 22 Fed. Rep. 705; *Ex parte Lee Tong,* 9 Sawy. 333; S. C. 18
Fed. Rep. 253.

In *Ex parte Royall,* 117 U. S. 241, S. C. 6 Sup. Ct. Rep. 734, the
supreme court has finally determined the jurisdiction of the circuit
and district courts in the premises in accordance with the action of
the court in the above-entitled cases.   The ruling is, in short, that
such courts have jurisdiction to discharge from custody a person who
is restrained of his liberty in violation of the constitution of the United
States, although he may be held at the time under state process for
trial on a charge of crime, or on a conviction thereof; but the court
may, in its discretion, subordinate to any circumstances requiring

immediate action, refuse the writ in advance of the trial in the state court, or even after conviction, and before the case has been heard on error in such court.

The section in question of the state statute reads as follows:

"It shall be unlawful to sell or give away opium, or any preparation of which opium is the principal medicinal agent, to any person except druggists and practicing physicians, except on the prescription of a practicing physician, written in the English or Latin language; and the druggist filling such prescription shall keep the same on file for one year, subject to be inspected by any public officer of the state."

Sections 2, 3, and 4 of the act relate to smoking opium, and section 5 prescribes a rule of evidence in trials for the violation thereof. Section 6 prescribes the punishment for any violation of the act, which may be by imprisonment in the penitentiary not more than two years, nor less than six months; or in jail for not more than six months, nor less than one; or by a fine of not more than $500, nor less than $50. Section 20 of article 4 of the constitution of the state requires that an "act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which shall not be expressed in the title," only so much of the same shall be void.

It is claimed by counsel for the petitioner that section 1 of this act is, in substance and effect, a *prohibition* of the sale of opium, while the subject expressed in the title is only the *regulation* of such sale. And from this premise the deduction is made that the section is void, because (1) the subject of prohibition is not expressed in the title; and (2) a prohibition to sell the opium in the hands of the petitioner, and others within the state at the date of the passage of this act, is in effect to deprive him and them of their property therein without compensation or due process of law.

In support of the first deduction counsel cite *In re Paul*, 94 N. Y. 497, in which the word "tenement-houses" in the title of an act was held not broad enough to include the subject of "dwellings," mentioned in the body of the act; and *Town v. Sainer*, 59 Iowa, 26, S. C. 12 N. W. Rep. 753, where a town ordinance was held void because the title ran, "Regulating the use and sale of intoxicating liquors," while the body of it was "entirely prohibitory."

In support of the second deduction counsel cited *Wynehamer v. People*, 13 N. Y. 378, in which it was held that an act forbidding any one to sell, or keep for sale, intoxicating liquors, except for mechanical, medicinal, or sacramental purposes, was, as to such liquors then owned by persons in the state, null and void, because it deprived them of their property therein without due process of law, contrary to the constitution of the state; and *State v. Walruff*, 26 Fed. Rep. 178, in which it was held, in the circuit court for the district of Kansas, that the Kansas constitutional prohibition against the manufacture of beer in the state after 1880, except for medicinal, scientific,

and sacramental purposes, was void as to brewery property erected and in use in the state prior to that date, on the ground that such prohibition destroyed the value of such property largely, and the owner was thereby so far deprived of the same without compensation or due process of law, contrary to the fourteenth amendment. On this point counsel also cited *In re Jacobs*, 98 N. Y. 98; *People* v. *Marx*, 99 N. Y. 377.

Upon the case made by the petitioner, it is admitted that it must, at least, appear that the section is, in substance and effect, prohibitory of the sale of opium before he is entitled to the writ. And whether an act is prohibitory of the sale of an article in that sense must depend on circumstances, and particularly the character of the article, and the uses and purposes to which it has generally been applied in the community. A law limiting the sale or disposition of bread and meat to druggists and practicing physicians, unless perscribed by a physician in the course of his practice, would, considering the universality of the need and use of these articles in the community, be regarded as prohibitory in its character. But opium is a medicinal drug, and has never been used, and has no claim to rank, as a necessary of life. Its use has been mainly in medicine, as an anodyne; and it is classed by science among the active poisons: In the East it has been used for centuries, by smoking and mastication, to produce a kind of intoxication; but, until lately, such use has been unknown in the United States, and is now chiefly confined to the Chinese. In the American Cyclopedia (*verbum* "Opium") it is said to be a vice "less easy of detection than alcoholic intoxication, which it is said to replace where law and custom have made the latter disreputable. Its evil effects are most manifest upon the nervous and digestive systems," and its final results resemble *delirium tremens*. The sale or disposition of an article which is an active poison, and has no legitimate use except in medicine, may be regulated accordingly. In my judgment, the act does not in effect prohibit the disposition of the drug, but allows it under such circumstances, and on such conditions, as will, according to the general practice and opinions of the country, prevent its improper and harmful use.

True, we permit the indiscriminate use of alcohol and tobacco, both of which are classed by science as poisons, and doubtless destroy many lives annually. But the people of this country have been accustomed to the manufacture and use of these for many generations, and they are produced and possessed under the common and long-standing impression that they are legitimate articles of property, which the owner is entitled to dispose of without any unusual restraint; and even now it is pretty well settled that the legislature may absolutely prohibit the future manufacture and use of these articles, and may also prohibit the sale and use of the stock in hand, on making compensation to the owners for the loss occasioned thereby. On the other hand, the use of opium, otherwise than as this act

allows, as a medicine, has but little, if any, place in the experience or habits of the people of this country, save among a few aliens. Smoking opium is not our vice, and therefore it may be that this legislation proceeds more from a desire to vex and annoy the "Heathen Chinee" in this respect, than to protect the people from the evil habit. But the motives of legislators cannot be the subject of judicial investigation for the purpose of affecting the validity of their acts. It is the duty of the law-maker, as far as his power extends, to enact laws for the conservation of the morals of society, and to promote the growth of right thinking and acting in all matters affecting the physical or mental well-being of its members. In the exercise of this power, and the discharge of this duty, this act to regulate the disposition and use of opium, considered as a dangerous drug, which the weak and unwary, unless prevented, may use to their physical and mental ruin, appears to have been passed. The subject of the act is sufficiently expressed in the title, and the use of the article is not thereby restrained, so as to destroy its value as a medicine or remedial agent, the only use of which is generally considered and accepted as a proper one in this country. *State* v. *Ah Chew*, 16 Nev. 50.

The application for the writ is denied.