Decided April 27, 1896.

## EX PARTE MON LUCK.

### MON LUCK *v.* SEARS.
[44 Pac. 693; 32 L. R. A. 738.]

1. TITLE OF ACT—STATE CONSTITUTION, ART. IV, § 20.—A section providing that no person shall have in his or her possession opium unless upon a license or the prescription of a physician or pharmacist for medicinal purposes, is clearly germane to and within the subject of an act which is entitled "An to regulate the sale and gift of opium and certain other poisonous drugs, and prohibiting any person not a licensed physician or pharmacist from having such drugs in his possession, unless prescribed by a physician or pharmacist": *State* v. *Shaw*, 22 Or. 287, cited and approved.

2. CONSTITUTIONAL RIGHT—OPIUM.—Possession of opium without having a license therefor or without having obtained it on the prescription of a physician or pharmacist for medicinal purposes may be made a criminal offense in the discretion of the legislature without violating any constitutional right.

From Multnomah: E. D. SHATTUCK, Judge.

Mon Luck having been convicted and sentenced to the county jail for violating a state act regulating the sale of opium, applied for a writ of *habeas corpus* to secure his discharge on the ground that the act in question is unconstitutional. The writ was denied, and petitioner appeals.          AFFIRMED.

For appellant there was an oral argument by *Mr. Ralph W. Wilbur*, and a brief urging these points:

In a *habeas corpus* proceeding the court in pursuing its inquiry into the legality of the imprisonment should see if the original court had jurisdiction: Church on Habeas Corpus, § 236; Hill's Code, § 622; *Barton* v. *Saunders*, 16 Or. 53; Wood on Habeas Corpus, 130.

The subject of every act of the legislature must be expressed in the title (Constitution of Oregon, Art. IV, § 20); and in the United States when a constitution requires the subject to be expressed in the title of a legislative enactment, the title should be taken into consideration in construing the act, and may often limit its meaning: 23 Am. and Eng. Ency. of Law, at page 328; *State* v. *McGuire*, 24 Or. at page 377 (21 L. R. A. 478).

It is fundamental that a man can do what he pleases with his own property, (as that he may with impunity drink liquor and even become intoxicated in the privacy of his own room: Tiedeman on Police Power, § 68,) and liberty and the pursuit of happiness are violated when this free right of disposition is denied: Cooley on Constitutional Limitation, 436, 716; Tiedeman on Police Power, § 68.

The legislature cannot pass a law which prevents the simple possession of opium or intoxicating liquors: Tiedeman on Police Power, § 140; *State* v. *Gilman*, 33 W. Va. 146 (6 L. R. A. 847); *Wyenhamer* v. *People*, 13 N. Y. 384; *Ex parte Ah Lit*, 11 Sawy. 447; *People* v. *O'Neil*, 71 Mich. page 334.

For respondent there was a brief by *Mr. Wilson T. Hume*, district attorney, with an oral argument by *Mr. Cicero M. Idleman*, attorney-general.

Opinion by MR. CHIEF JUSTICE BEAN.

This is a *habeas corpus* proceeding, and comes here on appeal from a judgment of the court below remanding the petitioner to the custody of the sheriff of Multnomah County. The petitioner was arrested, tried, and convicted for having in his possession opium, in violation of the provisions of an act entitled "An act to regulate the sale and gift of opium, morphine, eng-she or cooked opium, hydrate of chloral, or cocaine," approved February twenty-first, eighteen hundred and eighty-seven: Laws, 1887, p. 87. The first section of this act provides that "No person shall have in his or her possession or offer for sale" any of the drugs enumerated in the title "who has not previously obtained a license from the county clerk of the county in which he or she resides or does business." Sections from 2 to 6, inclusive, provide the form of the license; that it shall be issued only to regularly qualified physicians who keep a stock of drugs and medicines for their own use in prescription, and regularly qualified

druggists; prohibits the sale and gift of any of the enumerated drugs to any person except on the prescription of a physician or regularly qualified pharmacist, and then only of the kind and quantity therein named; provides that none but physicians and pharmacists who have duly registered as required by the act shall be authorized to prescribe the use of any of such drugs, and then only for the cure of disease, and in such cases and quantities as are recognized by medical science as proper and fit. Section 7 requires physicians and pharmacists who have prescribed any of said drugs to keep a record thereof, which shall be open to public inspection, showing the date of prescription, the name and residence of the patient, the disease for which it was prescribed, and how much and how often the patient was instructed to use the same. Section 8 defines who shall be deemed physicians and pharmacists within the meaning of the act. Section 9 provides the penalty for its violation, and section 10 gives the justice's court jurisdiction of offenses described therein.

1. The petitioner claims that he is illegally restrained of his liberty, because, *first*, the act of eighteen hundred and eighty-seven does not intend to make the possession of opium a crime unless it is kept for sale or gift; and, *second*, if it does, it infringes upon the fundamental rights of liberty and property, and is therefore void. That the act with which the defendant was charged, namely, having in his possession opium without either a license there-

for or it having been obtained upon the prescription of a physician or pharmacist for medicinal purposes, is within the restraint of the statute there can be no doubt.  The act provides in plain and unambiguous language that no person shall have in his or her possession opium who has not previously obtained a license therefor, unless, as the law clearly implies, it be obtained on the prescription of some duly qualified physician or pharmacist for medicinal purposes.  Its evident purpose and object is to regulate the sale and traffic in opium and the other enumerated poisonous drugs so as to prevent a prevalent evil by confining their use to strictly medicinal purposes, and to that end it prohibits any person except licensed physicians and druggists from having such drugs in his or her possession unless obtained for medicinal purposes in the manner provided in the act, and such provision is clearly germane to and within the subject of the act as expressed in the title: Black on Intoxicating Liquors, § 64; *State* v. *Shaw*, 22 Or. 287 (29 Pac. 1028).

2.  Nor do we think the act, as so interpreted, unconstitutional, as being an infringement on the rights of liberty and property as guaranteed by the fundamental law.  Opium is an active poison, and has no legitimate use except for medicinal purposes; but it is frequently used to produce a kind of intoxication by smoking or eating, a loathsome, disgusting, and degrading practice, which results not only in pauperism and crime, but also in the serious impairment of the mental and physical condi-

29 Or.— 28.

tion of those who indulge in it. The sale and disposition of such a drug may unquestionably be regulated and controlled by law, and whether its nature and character is such that for the protection of the public its possession by unauthorized persons should be prohibited is a question of fact and of public policy, which belongs to the legislative department to determine. The discretion of the legislature in the employment of means which are reasonably calculated to protect the health, morals, or safety of the public is very great; and so long as it does not infringe upon the inherent rights of life, liberty, and property, either directly or through some limitations upon the means of living or some material right essential to the enjoyment of life, its determination is conclusive upon the courts. And, while the state cannot assume to be the guardian of morals, it has the undoubted power to enact measures calculated for the suppression of such forms of vice as threaten its welfare by generating disease, pauperism, and crime, and, primarily, it is for the legislature to determine what laws and regulations are needful for that purpose: *Mugler* v. *Kansas*, 123 U. S. 623 (8 Sup. Ct. 273); *Powell* v. *Pennsylvania*, 127 U. S. 678 (8 Sup. Ct. 992, 1257). Of course this power must be so exercised as not to arbitrarily infringe upon personal and property rights, but "in many cases of mere administration the responsibility is purely political, no appeal lying except to the ultimate tribunal of the public judgment, exercised either in the pressure of opinion or by means of the suffrage": *Yick Wo* v. *Hopkins*, 118 U. S. 370 (6 Sup. Ct.

1064). To this last class, in our opinion, belongs the case before us. The act does not forbid the possession or prohibit the sale of opium, but allows both under such regulations and conditions as will, it is believed, tend to prevent its harmful and improper use. No right secured by the fundamental law is interfered with or impaired by this legislation, because the possession and use of the drug are not restrained thereby so as to destroy its value as a remedial agent, its only recognized legitimate use. Its object and purpose is to so regulate the possession, sale, and disposition of a dangerous yet useful drug as to prevent the weak and unwary from using it to their own physical and mental ruin, and to the serious injury of the general public; and, in our opinion, violates no constitutional right: *State* v. *Ah Chew*, 16 Nev. 50 (40 Am. Rep. 488); *Ex parte Yung Jon*, 28 Fed. 308; *Ah Lim* v. *Territory*, 1 Wash. St. 156 (28 Pac. 588, 9 L. R. A. 395); *Davis* v. *State*, 68 Ala. 58 (44 Am. Rep. 128); *State* v. *Smyth*, 14 R. I. 100 (51 Am. Rep. 344).

We are not unmindful of the fact that some courts have held that the legislature cannot make it a crime to have in one's possession intoxicating liquors, although it may regulate or even prohibit the sale and disposition thereof: *State* v. *Gilman*, 33 W. Va. 146 (6 L. R. A. 847, 10 S. E. 283); Tiedeman on Police Power, § 68. But the principle of these cases has no application here. It is a matter of common knowledge that intoxicating liquors are produced principally for sale and consumption as a beverage, and so common has been their manufac-

ture and use for this purpose that they are regarded by some courts as legitimate articles of property, the possession of which neither produces nor threatens any harm to the public. But the use of opium for any purpose other than as permitted in this act has no place in the common experience or habits of the people of this country, but is admitted by all to be an insidious and demoralizing vice, injurious alike to the health, morals, and welfare of the public; and therefore its possession, unless in the manner provided by the legislature for the purpose stated, cannot be presumed to be of any value to its owner except on the hypothesis that he intends to make a use of it injurious to himself and the general public, and hence it is within the legitimate exercise of the police power of the state to regulate its sale and confine its possession to certain designated persons, as a means of public safety. It follows that the judgment of the court below is right and must be affirmed.                    AFFIRMED.