### W. S. McLain v. The State.

#### No. 2107. Decided June 19, 1901.

**1.—Local Option—Statutory Exceptions—Constitutional Law.**

The statutory exception embodied in the local option law as to medicinal and sacramental purposes do not render the law unconstitutional. Following Bowman v. State, 38 Texas Criminal Reports, 14.

**2.—Same—Physician's Prescription.**

On a trial for violating local option, a physician's prescription for intoxicating liquor is no defense for the sale, which does not, as required by law, article 403, Penal Code, certify on the honor of the physician that he has personally examined the patient to whom the prescription is given.

**3.—Illegal Prescription—Liability of Physician.**

Whenever a sale of intoxicating liquor in a local option territory is brought about by reason of an illegal prescription of a physician, the physician and seller are both liable for the punishment prescribed for illegal sales.

**4.—Same—Physician Not an Agent of Purchaser, When.**

A physician is not the agent of the purchaser of intoxicating liquor who writes an illegal prescription in a drugstore, and at the request of the clerk gets the bottle of whisky and hands it to the purchaser and receives the money for it from the purchaser. Henderson, J., dissenting.

Appeal from the County Court of Hill. Tried below before Hon. L. C. Hill, County Judge.

Appeal from a conviction of violating local option; penalty, a fine of $25 and twenty days imprisonment in the county jail.

The following statement of the case is taken from the brief of counsel for the State, to wit:

The record in this case shows that on or about the 20th day of December, 1899, the witness B. F. James bought intoxicating liquor from the appellant in the city of Itasca, in justice precinct No. 2, Hill County, Texas. That the liquor purchased was whisky, and that he paid the appellant, W. S. McLain, $1 for the same. The witness James testified

that he met Lewis Simmons, the proprietor of a drugstore in Itasca, a short distance from the drugstore, out in the street, and told him he desired to buy some whisky, and that this was before he saw the appellant, McLain. Simmons at that time was on his way to dinner. After talking with Simmons he proceeded to the residence of appellant, a short distance away, in company with the witness John Kenney. After seeing the appellant, the witness and appellant proceeded directly to Simmons' drugstore, the witness Kenney following them to the rear. The witness James told appellant that he wanted a quart, and said that he wanted "Yellow Rye." After reaching the drugstore appellant disappeared from the view of the State's witnesses and went in the back room of the drugstore after the whisky, and almost immediately appellant returned with the quart and he paid him a dollar and the State's witnesses then walked out. That after getting the whisky the State's witnesses remained in Itasca the greater portion of the day. The witness James testified that the reason Simmons gave for not returning to the drugstore and selling the whisky himself was that he was on his way to dinner, and said to witness go and see Dr. McLain; that Simmons said nothing about a prescription whatever. That while appellant went to the rear after the whisky the witnesses James and Kenney were near the front of the drugstore, at the counter; that McLain went behind the counter to the rear; that appellant remained absent only a minute or a minute and a half, and that there was no one else in the front part of the building except the witnesses James and Kenney.

The witness Kenney testified that he accompanied James to the residence of the appellant and that they met the appellant leaving his house out on the sidewalk. That in going from his residence to the drugstore the appellant and the witness James were two or three steps in front of him, and that he could not hear what they were talking about, but after entering the drugstore the appellant went behind the counter and disappeared from witness' view, but shortly returned, and that after leaving the drugstore and going to the cars where coal was being loaded they drank some of the whisky.

W. L. Simmons, the proprietor of the drugstore, testified about meeting the witness James out in the street, and that he told James he would have to have a prescription and to see a doctor, and that he proceeded to his dinner and was gone thirty or forty minutes, and that on his return to the drugstore he found a prescription there. That at the time of this transaction the appellant McLain had his office over said drugstore, and that appellant usually staid at said drug store.

The appellant testified in his own behalf, and stated that the witness James came to his residence on said day, and that he and the witness then proceeded to Simmons' drugstore and he asked witness if he was sick, and the latter replied yes, and he then told him if he was sick, and if he would see a doctor, he could get a prescription, and that as they walked along he asked him what was the matter, and the witness stated he had a cold for some time and that he had gotten wet. That appellant

then said, "If you have got a cold it is liable to give you pneumonia. I expect you need some whisky. Come up to the drugstore and I will write you a prescription and give you some whisky, so you can take it and go home and keep out of this bad weather." That appellant then wrote the prescription and hung it on the file.

On cross-examination appellant stated that he made his headquarters at Simmons' drug store ever since the same had been open, possibly for a year and a half. That he did not know how many prescriptions he had filled for whisky at that place; that he could not make an estimate. That he went back there and got the whisky and gave it to him, and witness handed appellant a dollar for it. He further testified: "I did this because he asked me to do it. I did not need any authority to go into that store." Counsel for the State propounded to appellant the following question: "Do you mean to say that you, without any color of authority, will go into another man's store and get goods without some sort of authority?" To which appellant answered: "I did not need none."

F. M. Taylor, a witness for appellant, testified that he was a druggist in said establishment. That he remembered the occasion of the witness James purchasing the whisky; that appellant wrote a prescription, etc., upon which the sale was based, and that he was behind the prescription case when he wrote it. The witness further testified: "Mr. Simmons and I were behind the prescription case when he wrote it." And that witness was filling a prescription for some drugs at the time and that he asked appellant to get the whisky; that witness was busy at the time and that McLain got the whisky and handed it to Mr. James. That the whisky sold to Mr. James was to the left of the prescription case in the whisky room.

On cross-examination the witness Taylor stated that he was unable to testify what prescription he was filling at the time of the transaction, and that he was unable to remember who the prescription was for that he was filling, and that he could not tell what the ingredients were that the prescription called for that he was filling, and that he could not remember any of the ingredients, and that he could not possibly remember who he was filling it for, but that he was very positive as to what he said to Dr. McLain. The witness further testified: "I don't remember Dr. McLain saying anything. I don't remember whose prescription we were filling at that time. We filled so many the facts did not impress themselves upon my mind at the time they happened, but I remember a portion of these facts and not the other portion. I am still working in that house. * * * I was behind the prescription case. The witness James was in the front of the building when the whisky was handed to him and I was behind the prescription case. I testified that McLain handed the whisky to James. I know he did because I asked him to do it and saw him do it. There was a prescription case between me and the front end of the store. I was behind the prescription case. There are glasses there that you can see through. I can't give the jury any reason

for watching to see how that happened. I remember, though, it did happen and I was filling a prescription at the time it did happen. I can fill a prescription and at the same time watch transactions and not remember whose prescription I was filling."

The witness B. F. James, in rebuttal, testified that when he called for the whisky from McLain he was not sick; that he did not make any statement to appellant that he was sick. That he did not make any statement about it at all. That appellant did not examine witness to see if he was sick. He further testified: "I. did not ask him to write a prescription or to see if I was sick. I just told him I wanted some whisky. I did not see any prescription and I did not know there was one written or one thought of."

*Wear, Morrow & Smithdeal,* for appellant. [No brief for appellant found within the record.—Reporter.]

*McKinnon & Sneed, C. F. Greenwood,* County Attorney; *D. Derden, B. Y. Cummings,* and *Rob't A. John,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was charged with selling liquor in a local option precinct. He defended on the ground that, as a physician, he merely gave a prescription to one James for whisky, which prescription was to be filled by the druggist. The facts show that James approached the owner of the drug store for the purpose of purchasing whisky, and was requested to apply to a physician for a prescription. James went immediately to appellant, and informed him of the fact that he wanted whisky. They went to the drugstore, and appellant states that he went behind the counter, to the prescription case, wrote the prescription, called the clerk's attention to it, and the clerk requested him to hand the whisky to James, which he did, receiving therefor $1. Appellant also contends that he examined James by asking him some questions as to his physical condition, and that James informed him that he had been riding through the inclement weather and had a cold, and appellant thereupon told him he needed whisky and gave the prescription. James said he did not get any prescription; that he did not inform appellant he was sick, etc. So appellant's defense may be stated: (1) That he was a physician, not a seller, and gave a prescription, and, if responsible at all, would be for having given an illegal prescription; (2) if this is not well taken, then he did not sell the whisky, but was acting as agent and friend of James in getting the whisky. The prescription is as follows: "Take this to Simmons' Palace Drug Store, where it will be carefully filled, and only the best and purest drugs used, opposite the postoffice, at Itasca, Texas, for ℞ Whisky, one quart. I certify that I have examined Bud James, and find him actually sick and in need of the stimulant above prescribed as a medicine. W. S. McLain, M. D., No. 3795. Date, December 20th, 1899." Stamped over the face: "Cancelled. De-

cember 20th, 1899.  J. C. Simmons."  On objection by the State this prescription was excluded because not in conformity with law, having omitted the expression "personally examined," and the certificate upon honor required by articles 403, 405, Penal Code.  In our opinion, the court was correct in excluding this testimony.  Under the local option law, sales of intoxicants are prohibited, except (1) when used for medicinal purposes; and (2) for sacramental purposes.  The constitutionality of this law was attacked because of these exceptions; the contention being made that, as the Constitution had prohibited the sale, therefore the Legislature could not make these exceptions.  This court held otherwise in Bowman's case, 38 Texas Criminal Reports, 14.  It will be unnecessary to review that case, or the reasons of the court for holding as it did.  We are still of the opinion that decision is correct.  If the Legislature had the authority to make the exception as to sales for medicinal purposes, it would follow, as a matter of course, they had the further right to hedge that exception as was thought to be proper and reasonable.  In doing this, that body has provided that for medicinal purposes intoxicants can only be sold upon a prescription certifying that a regular physician signing the prescription has personally examined the party to whom the prescription is given, and that he is actually sick; and he must certify these matters upon his honor.  This is the character of prescription required by the Legislature.  It is the character of prescription provided as a part and parcel of the law when put into operation; and, the Legislature having the right to prescribe the mode and manner of selling, it would follow that in order to avoid the punishment the terms of the exception must be followed.  There is no kind of prescription authorizing the sale, except that provided by statute, and it is not a prescription until it has complied with the law.  Where a sale occurs, an illegal prescription is no protection to the seller or the physician, because in that event the physician makes himself a party to the sale by giving an illegal prescription by means of which the law is evaded.  As in misdemeanors all are principals, so, when a physician gives an illegal prescription under which a sale occurs, he is as much responsible for the sale as is the seller.  Whenever a sale in a local option territory is brought about by means of an illegal prescription, the physician and seller are both liable.  Each is required to know the law; each is required, in order to bring about the sale, to comply with the terms of the law; and, in failing, both are liable for the punishment prescribed for illegal sales.  We are not discussing the attitude of the physician who gives a false certificate, though in exact terms of the law.  He may be guilty of the sale.

Nor is there any merit in the contention that appellant was the agent of James in purchasing the whisky.  The testimony for the State absolutely excludes this idea.  Nor does the defendant's testimony indicate such a theory.  When James approached appellant and told him he wanted whisky, appellant says he went to the drugstore with James, went behind the counter to the prescription case, and wrote a prescription, and

left it with the clerk, which was subsequently canceled by Simmons. This was an illegal prescription. The clerk requested appellant to get the bottle of whisky and hand it to James. Appellant did so at the instigation of the clerk, for which he received $1 in money from James. This does not come within the rule laid down by this court in previous cases, which constitutes, under certain circumstances, the party who buys the intoxicants the agent of the purchaser.

So far as these questions are concerned, this judgment should be affirmed, and it is so ordered.

*Affirmed.*

HENDERSON, Judge (dissenting).—A majority of the court hold that the prescription offered in evidence by appellant, and which was excluded by the court, was properly excluded because of the omission of the word "personally" before examined, and the certificate was not "upon honor;" holding that these words are essential in a physician's prescription, as prescribed in article 403 et seq., Penal Code. While these words constitute a part of the physician's certificate, yet I do not believe that, because they are lacking, such instrument is not admissible in evidence, especially when in that connection there is proof tending to show that the statute regulating physicians' prescriptions for the sale of liquor, as in this case, was substantially complied with. To so hold would be to eliminate the element of good faith on the part of the physician, and to utterly ignore the question of intent, which I understand to be the essential element in the trial of criminal cases. This is not in accord with the doctrine announced in Price v. State, 40 Texas Criminal Reports, 428, and Garrett v. State, 1 Texas Court Reporter, 836. In this case the paper offered was in every sense a compliance, with the exception of the omission of the words "personally" and "upon honor," as before stated; and this was supplemented by appellant's proof, tending to show that he did make the personal examination required by the statute. When the paper evidence was rejected, of course appellant's defense was destroyed. The jury were never permitted to pass upon that view of the case.

I note that the majority hold that where the prescription of a physician is not in strict compliance with the terms of the law, and a sale is made under prescription, the physician makes himself a party to the sale by giving an illegal prescription by means of which the law is evaded. I am not prepared to agree that the doctrine of principals is applicable to a case of this character, inasmuch as our statute with reference to the granting of prescriptions by physicians would appear to cover this matter, and provide for offenses against physicians giving out illegal prescriptions. See articles 403, 405, Penal Code. By reference to these it will be seen that it is made an offense for any person who is not a regular practicing physician to give out a prescription in a local option precinct for the sale of liquor, or for any practicing physician who is directly or indirectly, either for himself or as the agent or employe of another, in-

terested in the sale of intoxicating liquor, to give a prescription to be used in obtaining intoxicating liquor in any such precinct. And, again, it is made an offense for any physician to give out such prescription to any one who is not actually sick, and without a personal examination of such person. So that if one is a physician, and gives out a prescription, it would occur that he should be punished under these articles. If he is interested in the sale as agent or employe of the druggist, he is punishable for granting an illegal prescription; and he is also guilty of an offense if he gives a prescription to one who is not actually sick, and without a personal examination. Now, should a physician grant a prescription to one who is not actually sick, and without a personal examination, would he be punishable as a principal to the offense of a sale, or, rather, would he not be punishable under the statute for issuing an illegal prescription? It occurs to me that where a regular, practicing physician has in good faith performed his duty by a personal examination of the patient, and then given him a prescription for the purpose of obtaining whisky for his ailment, if the certificate should by accident or mistake be wanting in some of the requirements of the statute this should not exclude it as evidence, but, in connection with the proof offered, it should be admitted, and the jury authorized to pass on the question. If there was no good faith, or it appeared that the practicing physician was directly or indirectly interested in the sale, he would be punishable, not for making the sale, but for granting the illegal prescription. Key v. State, 37 Texas Crim. Rep., 77.

[NOTE.—Appellant's motion for rehearing was overruled without a written opinion.—Reporter.]