[Crim. No. 1633. In Bank.—March 13, 1911.]

## In the Matter of YUN QUONG, on Habeas Corpus.

POISON LAW—AMENDMENT OF 1909—UNLAWFUL POSSESSION OF OPIUM —CONSTITUTIONAL LAW—TITLE OF ACT.—The act entitled "An act to regulate the sale and use of poisons in the state of California, and providing a penalty for the violation thereof," as amended in

1909, by providing that it shall be unlawful for any person to have in his possession any opium, etc., or any preparation thereof containing more than two grains to the fluid ounce, except upon the written order or prescription of a physician, dentist, or veterinary surgeon, or except otherwise made lawful in certain excepted cases, is not unconstitutional on the ground that the subject of the act is not embraced within its title, as required by section 24 of article IV of the state constitution.

ID.—AMENDMENT NOT VIOLATING FEDERAL CONSTITUTION—PROPERTY-RIGHT IN OPIUM NOT INFRINGED.—Such amendment to the act regulating the sale and use of poisons, and forbidding the possession of opium, except in certain specified cases, is not violative of any of the provisions of the fourteenth amendment to the constitution of the United States, and is no infringement upon the rights of liberty and property protected thereby.

ID.—RIGHT TO HOLD AND ENJOY PROPERTY SUBJECT TO POLICE POWER.—The right to hold and enjoy property is subject to such reasonable regulation as is necessary to promote the common good, and to the proper exercise by the legislature of its general police power. It is no valid objection to a police regulation that it prevents a person from doing something that he wants to do; but under the exercise of the general police power, persons and property are subject to restraints and burdens to secure the general welfare of the state.

ID.—ACT WITHIN POLICE POWER—DISCRETION OF LEGISLATURE.—When it is determined that any act is within the police power of the state, nothing further need be said. The rest is left to the discretion of the law-making power in the exercise of that plenary power in the state, which enables it to prohibit all things hurtful to the public welfare.

ID.—HARMFUL EFFECT OF OPIUM—VALID REGULATION.—Opium is an active poison, which has no beneficial use except as a medicinal drug; and its unrestricted use would have a debasing and harmful effect on the moral and economic welfare of a large portion of our population; and the act which permits its use under all proper circumstances, while otherwise prohibiting its possession, is a valid regulation within the general police power of the legislature.

ID.—CONSTRUCTION OF ACT—PUNISHMENT OF GUILTY AND NOT OF INNOCENT.—The act is not to be construed as punishing an innocent or unconscious possession of opium; but it is clearly intended to punish the guilty, conscious, and voluntary possession thereof.

ID.—RATIONAL BELIEF THAT UNRESTRICTED USE OF OPIUM LEADS TO EXCESS—JUSTIFICATION FOR RESTRICTIONS.—The validity of legislation does not depend upon the actual existence of supposed facts; but it is sufficient if the law-making body may rationally believe them to be established. If the belief that the use of opium, once begun, almost invariably leads to excess may be entertained by reasonable men, which is undoubted, such belief affords a suf-

ficient justification for applying to opium restrictions which might be unduly burdensome, as applied to other substances. Assuming, as this court must, that the legislature acted upon some such view, the restrictions upon the right to possess opium, and the other poisonous drugs named in the act, are to be considered reasonable and necessary to protect the public from the evils aimed at by the law.

APPLICATION for a Writ of Habeas Corpus to secure a discharge from custody upon a charge of having the possession of a certain preparation of opium.

The facts are stated in the opinion of the court.

Daugherty & Lacey, Carroll Cook, and Geo. W. Smith, for Petitioner.

J. A. Bardin, John F. Davis, and P. E. Zabala, for Respondent.

SLOSS, J.—*Habeas corpus.* The purpose for which the writ is sought is to test the validity of a certain statute hereinafter mentioned. Before applying to this court the petitioner had sought relief in the district court of appeal for the first appellate district. The justices of that court were unable to agree on the question presented to them and made an order remanding the prisoner. Accompanying the order were two opinions, one of which, prepared by Mr. Justice Kerrigan, reads as follows:—

"Upon the petition of Yun Quong a writ of *habeas corpus* was issued by this court. Yun Quong was arrested and is now in custody upon a charge of violating the provisions of a statute entitled, 'An act to regulate the sale and use of poisons in the state of California, and providing a penalty for the violation thereof,' (Stats. 1909, p. 422), in that the said Yun Quong had in his possession a certain preparation of opium prohibited by the act."

"Section 8 of said statute is attacked by petitioner as being in violation of his rights under the fourteenth amendment to the federal constitution. In substance that section provides that it shall be unlawful for any person to have in his possession 'any cocaine, opium, morphine, etc.,' or any preparation

thereof containing more than two grains to the fluid ounce, except upon the written order or prescription of a physician, dentist or veterinary surgeon licensed to practice in this state, or unless such possession is that of a jobber, wholesaler, manufacturer to pharmacies, retail pharmacy, physician, dentist or surgeon licensed to practice in the state.

"Before proceeding to a consideration of the constitutional question presented in the briefs, it is proper to observe that, while there have been a number of amendments to the act as originally passed by the legislature, regulating the use and sale of poisonous drugs (Stats. 1880, p. 102; Stats. 1891, p. 86; Stats. 1893, p. 68; Stats. 1901, p. 299; Stats. 1907, p. 124), it was not until the last amendment in 1909 that the mere possession of such drugs (with the exceptions therein specified) was made a crime. Doubtless this amendment was enacted because experience had shown that the statute in force was not sufficient to accomplish the end sought by the law-making power.

"We are not inclined to regard seriously the contention of petitioner that the act also violates section 24 of article IV of the constitution of this state, for we believe that its title sufficiently embraces the subject-matter of the act. (*Ex parte Liddell*, 93 Cal. 633, [29 Pac. 251]; *Ex parte Hallawell*, 155 Cal. 112, [99 Pac. 290].)

"Passing to the main point in the case, petitioner contends that opium is property, and that the act of the legislature making the mere possession of it a crime is an infringement upon the rights of liberty and property, and that therefore the act is void.

"The constitutional right to hold and enjoy property is subject to such reasonable regulation as is necessary to conserve the public health and morals and to promote the common good. Touching the subject of the proper exercise by the legislature of its general police power, the supreme court, in *French* v. *Davidson*, 143 Cal. 658, [77 Pac. 663], in passing upon the constitutionality of an act requiring the vaccination of school children, employs this language: 'Police regulations generally interfere with the liberty of the citizens in one sense. . . . It is no valid objection to a police regulation that it prevents a person doing something that he wants to do or that he might do, were it not for the regulation. When we have determined

that the act is within the police power of the state, nothing further need be said. The rest is left to the discretion of the law-making power. . . .'

"In *Ingram* v. *Colgan*, 106 Cal. 113, [46 Am. St. Rep. 221, 28 L. R. A. 187, 38 Pac. 315, 39 Pac. 437], the court said: 'Under the exercise of this general police power, persons and property are subject to restraints and burdens in order to secure the general comfort, health and prosperity of the state, of the perfect right of the legislature to do which . . . "no question ever was or upon acknowledged general principles ever can be made, so far as natural persons are concerned. It is coextensive with self protection, and is often referred to as the law of overruling necessity." It is that inherent and plenary power in the state which enables it to prohibit all things hurtful to the comfort and welfare of society.'

"Opium is an active poison, and while it has no beneficial use except as a medicinal drug, its unrestricted use would have a debasing effect on the moral and economic welfare of a large portion of our population. We are, therefore, of opinion that its use, possession and sale may be regulated by the legislature, and that the act under consideration does not violate the provisions of the fourteenth amendment to the federal constitution touching the citizen's right to the enjoyment of property. It permits the use and possession of opium under all proper circumstances while otherwise prohibiting it. Hence we have no doubt that the act is within the general police power of the legislature and is valid.

"The courts have held to be constitutional statutes against carrying concealed weapons (5 Am. & Eng. Ency. of Law, 2d ed., 729; *English* v. *State*, 35 Tex. 473, [14 Am. Rep. 374]; *Ex parte Cheney*, 90 Cal. 617, [27 Pac. 436]); acts making it unlawful for one to have in his possession gill nets (*State* v. *Lewis*, [134 Ind. 250, 33 N. E. 1024], 20 L. R. A. 52); or lottery tickets (*Ex parte McClain*, 134 Cal. 110, [86 Am. St. Rep. 243, 54 L. R. A. 779, 66 Pac. 69]; *Ford* v. *State*, 85 Md. 466, [60 Am. St. Rep. 337, 37 Atl. 173, 41 L. R. A. 551]), or game and fish out of season. (*Foster* v. *Scott*, 136 N. Y. 577, [32 N. E. 976, 18 L. R. A. 543]; *Ex parte Maier*, 103 Cal. 476, [42 Am. St. Rep. 129, 37 Pac. 402].) They have also held that acts limiting the hours of labor in underground mines and in smelting works, being for the preservation of the public health,

are not violative of the federal constitution. (*In re Martin,* 157 Cal. 51, [26 L. R. A. (N. S.) 242, 106 Pac. 235].)

"In *Ex parte Cheney,* 90 Cal. 617, [27 Pac. 436], an ordinance prohibiting the carrying of concealed weapons was under consideration, and the court said that the unrestricted habit of carrying weapons was the source of much crime; that the majority of citizens had no occasion or inclination to carry such weapons, and that the act in question was for the purpose of preventing breaches of the peace and the commission of other crimes. In the course of its opinion it said (referring to the act): 'By its terms ample provision is made for those whose necessities of life or of occupation require protection from carrying such weapons, and as the prohibition does not extend to those who come within the exceptions there is no invasion of the rights of the citizen.'

"So it may be said that the unrestricted use of poisonous drugs would be the source of ill health, pauperism, misery and insanity, the prevention of which must be numbered among the objects of all enlightened government. Most of our citizens have no desire or occasion to use any of the prohibited narcotics, and the rights of those who need them are amply protected by the terms of the act.

"In *In re Hallawell,* 8 Cal. App. 563, [97 Pac. 320], the court in the course of its opinion stated that opium was a medicinal drug of a poisonous nature, the use of which often tends to moral, mental and physical destruction; and that the legislature, in the exercise of its police power, could go so far as to absolutely prohibit the use and sale thereof. The legislature having the power to go to that extent we can see no reason why it cannot specify all the conditions under which opium may be held and distributed as a medicine, and provide, as it has done, that in all other instances its mere possession is unlawful.

"In *Luck* v. *Sears* [*Ex parte Mon Luck*], 29 Or. 421, [54 Am. St. Rep. 804, 32 L. R. A. 738, 44 Pac. 693], a well considered case, the precise question was passed upon. There the statute, as here, provided that it was unlawful, with certain specified exceptions, to have even the possession of opium. The court, in considering the same contention that is made here, said: "The act is not an infringement on the rights of liberty and property, as guaranteed by the fundamental law.

The discretion of the legislature in the employment of means which are reasonably calculated to protect the health, morals or safety of the public is very great; and so long as it does not infringe upon the inherent rights of life, liberty and property, either directly or through some limitations upon the means of living, or some material right essential to the enjoyment of life, its determination is conclusive upon the court. . . . The object and purpose of the act is to so regulate the possession, sale and disposition of a dangerous yet useful drug as to prevent the weak and unwary from using it for their own physical and mental ruin, and to the serious injury of the general public, and, in our opinion, violates no constitutional right.'

"The policy of the federal government on this subject is in harmony with the policy of this state, as is attested by the act of Congress approved February 9, 1909, [35 Stats. 614, U. S. Comp. Stats. Supp. 1909, p. 658], which prohibits the importation and use of opium for any other than medicinal purposes, and makes the mere possession of this drug sufficient evidence of a violation of the act unless satisfactorily explained to the jury. Statistics show that the vice of using opium is increasing in this country. It must be conceded that its indiscriminate use would have a very deleterious and debasing effect upon our race, and in order to prevent such a condition, and to make more effectual existing enactments, the legislature found it imperative to prohibit even the possession of the drug (with the exceptions above noted).

"Our attention has been called to a number of cases which hold that, although the sale of intoxicating liquors may be regulated or even prohibited, the mere possession of such liquors cannot be made an offense. But liquor is used daily in this and other countries as a beverage, moderately and without harm, by countless thousands (*Ex parte Mon Luck,* [29 Or. 421, 54 Am. St. Rep. 804, 32 L. R. A. 798, 44 Pac. 693]; *Ex parte Yung Jon,* 28 Fed. 308); whereas it appears there is no such thing as moderation in the use of opium. Once the habit is formed the desire for it is insatiable, and its use is invariably disastrous.

"There is no merit in the argument that the statute is unreasonable, and therefore void, because it is possible for one to have the possession of opium innocently and without knowl-

edge. The act clearly means a conscious and voluntary possession. (*Ex parte McClain,* 134 Cal. 110, [86 Am. St. Rep. 243, 54 L. R. A. 779, 66 Pac. 69].)|

"The writ is denied."

In distinguishing the case from those in which it had been held that the mere possession of intoxicating liquors cannot constitutionally be made a crime, the learned justice, in the foregoing opinion, uses this language: "It appears that there is no such thing as moderation in the use of opium. Once the habit is formed the desire for it is insatiable, and its use is inevitably disastrous." We do not understand this to have been intended to declare an established or conceded fact. So interpreted, the expression would be, perhaps, unduly sweeping. But the validity of legislation which would be necessary or proper under a given state of facts does not depend upon the actual existence of the supposed facts. It is enough if the law-making body may rationally believe such facts to be established. If the belief that the use of opium, once begun, almost inevitably leads to excess may be entertained by reasonable men—and we do not doubt that it may—such belief affords a sufficient justification for applying to opium restrictions which might be unduly burdensome in the case of other substances, as, for example, intoxicating liquors, the use of which may fairly be regarded as less dangerous to their users or to the public. Assuming, as we must, that the legislature acted upon some such view, the restrictions upon the right to possess the drugs named in the act cannot be said to be clearly unreasonable or unnecessary for the protection of the public from the evils against which the legislation in question is aimed.

With such modification as may be implied from what we have just said, we are entirely satisfied with the opinion in question, and adopt it as the opinion of this court.

The writ is discharged and the petitioner is remanded.

Angellotti, J., Shaw, J., Henshaw, J., Lorigan, J., and Melvin, J., concurred.