HYDE *v*. STATE.*

## (*Nashville.* December. Term, 1914.)

1. **STATUTES.** Enactment. Powers of legislature at special
   sessions.

   Pub. Acts 1st Ex. Sess. 1913, ch. 11, prohibiting the sale or dis-
   tribution of opium or any derivative thereof, except that a
   physician may prescribe the drugs when in personal attend-
   ance on a patient, is within the governor's call for a special
   session to consider a bill to regulate the intrastate trade or sale
   of opium or any derivative thereof, as against the objection that
   it regulates the practice of medicine. (*Post, p.* 213.)

   Acts cited and construed: Acts 1913, ch. 11.

   Case cited and approved: State ex rel. v. Woolen, 128 Tenn.,
   487.

2. **CONSTITUTIONAL LAW.** Health. Due process of law.
   Dealing in drugs.

   Pub. Acts 1st Ex. Sess. 1913, ch. 11, prohibiting the sale or dis-
   tribution of opium or any derivative thereof, except that a
   physician may prescribe the drugs when in personal attendance
   on a patient, does not deprive a physician of his liberty or
   property without due process of law as arbitrarily curtailing his
   right to practice by prescribing according to methods formerly
   obtaining, but is a valid exercise of the police power to regulate
   the sale and distribution of dangerous drugs. (*Post, pp.* 213-
   215.)

   Constitution cited and construed: Art. 1, sec. 8.

   Cases cited and approved: Matter of Yun Quong, 159 Cal., 508;
   Ex parte Mon Luck, 29 Or., 421; Ex parte Hallawell, 155 Cal.,
   112.

3. **CONSTITUTIONAL LAW.** Statutes. Validity. Right to
   question.

   One not prosecuted for violating any of the rules adopted for the
   enforcement of Pub. Acts 1st Ex. Sess. 1913, ch. 11, prohibiting

---

*As to who may raise objection that a statute contains an un-
constitutional discrimination, see note in 32 L. R. A. (N. S.), 954.

Hyde v. State.

the sale or distribution of opium or any derivative thereof, or for having in his possession any of the drugs specified, may not question the constitutionality of the provision authorizing rules for the enforcement of the act, or the provision of the act declaring that possession of the drugs shall be presumptive evidence of a violation of the act. (*Post, p.* 215.)

Constitution cited and construed: Art. 1, sec. 8.

Cases cited and approved: Palmer v. Southern Express Co., 129 Tenn., 116; Noell v. Power Co., 130 Tenn., 245.

4. HEALTH. Regulations. Violations.

Where a detective under the employment of the pure food and drug department of the State procured from a physician a prescription for morphine for an alleged friend, but, in fact, a fictitious person, and procured a druggist to fill the prescription, the physician was answerable as aiding in, and hence a principal in, the druggist's offense of a sale in violation of Pub. Acts 1st Extra Sess. 1913, ch. 11, prohibiting the sale of morphine, but permitting a physician to prescribe the same when personally attending a patient. (*Post, pp.* 215-217.)

Case cited and distinguished: McLain v. State, 43 Tex. Cr. R., 213.

5. CRIMINAL LAW. Acts of government agents. Defenses.

The physician could not defend on the ground that the prescription was procured and the sale made for the purposes of a criminal prosecution. (*Post, pp.* 217-219.)

Cases cited and distinguished: Grimm v. United States, 156 U. S., 604; Excise Com'rs v. Backus, 29 How. Pr. (N. Y.), 33.

Cases cited and approved: Goode v. United States, 159 U. S., 669; Rosen v. United States, 161 U. S., 29; Evanston v. Myers, 172 Ill., 266; People v. Murphy, 93 Mich., 41; State v. Lucas, 94 Mo. App., 117.

6. HEALTH. Illegal sales of morphine. Defenses.

The physician could not defend on the theory that the person prescribed for was nonexistent. (*Post, pp.* 219, 220.)

131Tenn14

FROM DAVIDSON.

Error to the Criminal Court of Davidson County.—
A. B. NEIL, Judge.

H. S. STOKES and W. C. CHERRY, for plaintiff in
error.

WM. H. SWIGGART, JR., Assistant Attorney-General,
for the State.

MR. JUSTICE WILLIAMS delivered the opinion of the
Court.

H. B. Hyde, a practicing physician, was indicted and
tried for an alleged violation of chapter 11 of the Acts
of the First Extra Session of the General Assembly
of 1913; one count of the indictment charging an un-
lawful sale, and the other an unlawful distribution,
of morphine, a derivative of opium.

A motion to quash the indictment was made in be-
half of accused, in which the constitutionality of the
act was challenged, but it was overruled by the trial
judge. The trial before a jury resulted in a verdict
of guilty, and the defendant below moved for a new
trial and in arrest of judgment, which motions were
overruled, with consequent appeal to this court.

The act on which the prosecution was based may
be partially quoted and partially outlined as follows:

"Section 1.  Be it enacted by the General Assembly of the State of Tennessee, that, on and after the taking effect of this act, it shall be unlawful for any person in the State of Tennessee to sell, barter, distribute, or give away any opium or coca leaves, or any compound, manufacture, salt, derivative, or preparation thereof:  Provided, that this shall not apply:

"a.  To the dispensing or distribution of any said drugs to any patient by a physician, dentist, or veterinary surgeon registered in the State of Tennessee under the provisions of the several acts regulating the practice of their profession:  Provided, however, that said distribution or dispensing shall be in the course of his professional practice only, and that such physician, dentist, or veterinary surgeon shall personally attend such patient.

"b.  To the sale, dispensing, or distribution of any said drugs by pharmacists registered under the laws of the State governing the practices of the profession of pharmacy to a consumer under and in pursuant to a written prescription issued by a physician, dentist, or veterinary surgeon of the standing mentioned in 'a' above:  Provided, however, that such prescription shall be dated as of the day on which signed, and shall be signed by the physician, dentist, or veterinary surgeon who shall have issued the same.

"c.  To the sale or distribution of any of the aforesaid drugs by any wholesale druggist, dealer, or jobber within the State to a retail dealer."

By section 3 of the act it is provided that the possession of any of the aforesaid drugs by persons, other than those excepted by sections 1 and 2, shall be presumptive evidence of a violation of the act.

Its section 6 provides that it is the duty of certain designated State officials to enforce the provision of the act, and that rules and regulations for its enforcement shall be made by them.

It may be observed, in passing, that the act is modeled after, and closely conforms to, the act of Congress later passed and approved December 17, 1914, effective on and after the 1st day of March, 1915, so far as the provisions of the congressional enactment can be made applicable to and regulate intrastate sales of the drugs affected.

Deeming that for the local act there is yet left a no inconsiderable field for operation, and that the act is the initial step in this State in the regulation of the sale of habit-forming drugs, we have examined with care the several assignments of error urged by the appealing physician.

The facts of the case appear to be: That one Allen, a detective, under employment by the pure food and drug department of the State, went to the office of Dr. H. B. Hyde, in Nashville, and requested a prescription for morphine for an alleged friend of his, Louise Walker, who he said lived on Russell street. No such woman existed, and there was no such street address as that given. Having obtained the prescrip-

tion and paid for it, the detective took it to a pharmacy, where it was filled; the detective paying therefor.

The drug passed out on the prescription was mor-phine in the form of hypodermic tablets.

The first question duly raised is that the act in question does not come within the purview of the call of the governor for the extra session of the legislature of 1913, at which the act was passed. Included in the governor's call for that session was the following as a measure to be considered:

"54. A bill to regulate the intrastate trade or sale of opium or coca leaves, or any compound, manufacture, salt, derivative or preparation thereof."

It is urged that the bill so passed, as far as appellant, Hyde, is concerned, was a regulation of the practice of medicine, and not a regulation of sale or sales. We think it quite obvious that the legislation is within the purview of the call. The practice of medicine is not undertaken by it to be regulated; it is affected at but a single and minor point, by way of incident to the distribution of the particular drugs a physician may find it necessary in his practice to prescribe. *State, ex rel., v. Woolen,* 128 Tenn., 487, 161 S. W., 1006.

It is next claimed as error that the act violates the fourteenth amendment of the federal constitution and article 1, sec. 8, of the State constitution, the last of which provides that no man shall be deprived of his liberty or property but by the law of the land. The particular provision pointed out as working such

denial is that of subsection (a) of the act, which is, in effect, that a physician can only prescribe the indicated drugs when he is in personal attendance on the patient; thus, it is claimed, arbitrarily curtailing his right to practice by prescribing according to methods formerly obtaining.

We think it clear that, in the exercise of the police power, it is competent for the legislature to strictly regulate the sale and distribution of any drug of a poisonous nature the use of which tends to debauch the public in the formation of a habit that undermines the physical, mental, and moral constitution of its users. *Matter of Yun Quong,* 159 Cal., 508, 114 Pac., 835, Ann. Cas., 1912C, 969; *Ex parte Mon Luck,* 29 Or., 421, 44 Pac., 693, 32 L. R. A., 738, 54 Am. St. Rep., 804.

A statute prohibiting the sale of certain poisons except on the prescription of a practicing physician has been held to be constitutional. *Ex parte Hallawell,* 155 Cal., 112, 99 Pac., 490.

We are of opinion that the legislature, in the act under review, validly specified the condition under which the prescription of such a physician may be issued. It is not unreasonable or arbitrary to hedge about their issuance by making it a condition that the physician "shall personally attend the patient"; since only by personal observation and diagnosis can the physician be sure that the drug is needed—that he himself is not being imposed on in an effort through him to defeat the very purpose the statute has in view. The assignment of error must therefore be overruled.

Several other errors are assigned attacking the constitutionality of certain other provisions of the act, to wit:

The provision of its section 6 that the pure food and drug inspector and the secretary of the State board of health shall make rules and regulations for the enforcement of the act is urged to amount to an unwarranted delegation of the legislative power. It is also said that the provision of section 3 of the act, to the effect that possession of the drugs on the part of any person other than those mentioned in section 1 shall be presumptive evidence of a violation of the act, is in contravention of article 1, section 8, of our constitution. The appellant is not being prosecuted for the violation of any rule or regulation made by the officials named, but for a violation of an offense prescribed by the act itself. He is not being prosecuted for having in possession such drugs. He therefore is not in a position to raise these constitutional questions. *Palmer* v. *Southern Express Co.*, 129 Tenn., 116, 165 S. W., 236; *Noell* v. *Power Co.*, 130 Tenn., 245, 169 S. W., 1169.

It must not, of course, be inferred from what is thus said that we entertain doubt as to the constitutionality of the provisions of the act attempted to be assailed.

The next contention of the appellant is that, upon the facts appearing on the record, his guilt is not established; that, since there was no patient in existence to whom the drug could have been dispensed, Louise

Walker being but a fictitious person, there was no delivery to any one other than an agent of the State, the detective, who received the drug not for use, but solely for the purposes of a prosecution of appellant.

There was a sale consummated between the druggist as vendor and the detective as vendee, which could only have been induced or brought about by the existence of the prescription in the hands of the latter.

May the appellant be treated as aiding in this sale, and therefore guilty of the prescribed misdemeanor as a principal?

The court of criminal appeals of Texas, in *McLain* v. *State,* 43 Tex. Cr. R., 213, 64 S. W., 865, held that, where a physician assists a person to purchase liquor by giving him an illegal prescription, the physician thereby becomes a party to the sale and an accomplice of the seller. The court said:

"There is no kind of prescription authorizing the sale, except that provided by statute, and it is not a prescription until it has complied with the law. Where a sale occurs, an illegal prescription is no protection to the seller or the physician, because in that event the physician makes himself a party to the sale by giving an illegal prescription by means of which the law is evaded. As in misdemeanors all are principals, so, when a physician gives an illegal prescription under which a sale occurs, he is as much responsible for the sale as the seller."

The prescription put out by a physician such as appellant is a requisite to, and, indeed, the basis of, any

valid sale on the part of a druggist; an inducement, therefore, in a true sense, proceeding from one on whose discretion as a trusted agent of society the legislature had made the dispensing of the drug to depend.  We hold that, on sound principle and true policy, the physician must be held to answer as a principal in the offense committed in the illegal sale.

May the physician successfully defend by proving that the prescription was caused to be issued and the sale to be made by means of the solicitation of an agent of a department of the State government, for the purposes of a criminal prosecution?

Whatever may have been the trend of the earlier authorities, it is now a well-established rule that such acts of government agent do not absolve the defendant's act of criminality.  Perhaps the leading case is that of *Grimm* v. *United States*, 156 U. S., 604, 15 Sup. Ct., 470, 39 L. Ed., 550, where it appeared that a post office inspector suspected Grimm of being engaged in the business of selling obscene pictures, and sending them through the mails.  Under assumed names the inspector wrote for a supply of the pictures, and received them from defendant.  The defense was that the deposit made in the mails was at the instance of the government, and through the solicitation of its agent, and was addressed to a fictitious person.  In the court's unanimous opinion, delivered by Mr. Justice Brewer, it was said:

"It does not appear that it was the purpose of the post-office inspector to induce or solicit the commis-

sion of a crime, but it was to ascertain whether the defendant was engaged in an unlawful business. The mere fact that the letters were written under an assumed name, and that he was a government official—a detective he may be called—do not of themselves constitute a defense to the crime actually committed. The official, suspecting that the defendant was engaged in a business offensive to good morals, sought information directly from him, and the defendant, responding thereto, violated a law of the United States by using the mails to convey such information, and he cannot plead in defense that he would not have violated the law if inquiry had not been made of him by such government official. The authorities in support of this proposition are many and well considered. . . . The law was actually violated by the defendant; he placed letters in the post office which conveyed information as to where obscene matter could be obtained, and he placed them there with a view of giving such information to the person who should actually receive those letters; no matter what his name; and the fact that the person who wrote under these assumed names and received his letters was a government detective in no manner detracts from his guilt.''

This case has been followed by *Goode* v. *United States,* 159 U. S., 669, 16 Sup. St., 136, 40 L. Ed., 300, involving the use of a decoy leter; *Rosen* v. *United States,* 161 U. S., 29, 16 Sup. Ct., 434, 40 L. Ed., 610; and other cases.

By an overwhelming weight of authority it is held that a person making an unlawful sale of intoxicating liquor is not excused of the criminal consequence because the sale was induced for the purpose of securing inculpating testimony. In *Excise Com'rs* v. *Backus,* 29 How. Pr. (N. Y.), 33, involving a sale of liquor, it was said:

"The mode adopted by the plaintiffs to bring to light the malfeasance of the defendant had no necessary connection with his violation of law. He exercised his own violation, independent of all outside influence or control."

A long line of authorities is in accord, among the cases being *Evanston* v. *Myers,* 172 Ill., 266, 50 N. E., 205; *People* v. *Murphy,* 93 Mich., 41, 52 N. W., 1042; *State* v. *Lucas,* 94 Mo. App., 117, 67 S. W., 971; and see note 17 Ann. Cas., 296.

It should be stated that the authorities make note of the fact that in cases of larceny cited in behalf of the appellant in the pending case the rule yet is that, if the evidence shows that the owner of the goods, or his agent, suggests to the accused the criminal design, and assists towards or in the taking, the owner thereby so consents as that there is no trespass to mark the transaction as larceny.

In the case at bar we fail to see how appellant can avail himself of the fact that the person prescribed for was nonexistent. Rather would it seem that this fact shows at once the recklessness of the accused and a substantial reason for the provision in the

statute that the giving of a prescription for the drug should be only to a patient actually attended. Appellant's attempted defense comes to this: There can be no guilt if there be no real and indicated patient to receive the product of the prescription; therefore, in order to a defeat of the statute with impunity, it is only necessary to put out prescriptions for fictitious persons. If the prescriptions or the drugs derived through them come into the hands of habitual users or whomsoever, what does it concern the physician?

The lawmakers certainly did not intend to pass a statute thus inane. The beneficent end they had in view should not be thwarted by any refinement of reasoning; certainly not by reasoning that leads to a conclusion so unsatisfactory, not to say unsound.

The judgment of the lower court, being found to be without error, is affirmed.