## EX PARTE HENRY BROWN.

### No. 1667. Decided November 10, 1897.

**1.  Cold Storage Act—Constitutional Law—Title of Act.**

The Act of the Twenty-fifth Legislature, known as "The Cold Storage Act," which is entitled, "An act to define and prevent cold storage in a local option county, precinct, city, town, or subdivision of a county, and to affix a penalty for running, keeping, or maintaining them in such county, city or town, or subdivision," is not obnoxious to section 35 of article 3 of the Constitution invalidating laws where the substance of the act is not embraced in the title. The title sufficiently embraces the subject matter of the act.

**2.  Same—Inalienable Rights—Right to Possess and Use Property—Police Regulations.**

Among the inalienable fundamental privileges and rights of the citizen is the right to acquire and possess, and the right to the free use and exercise of his property, if not in detriment to the rights of others, and this right also embraces the privilege of a citizen to keep in his possession the property of another; and, while it is true the State may interfere, under its police power, to prohibit the keeping of property injurious to the lives, health, and comfort of all persons, the Legislature is not authorized, under the guise of a police regulation, to invade the fundamental privileges and interfere with the full enjoyment by the citizen of his recognized property rights. If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety, has no real or substantial relation to those subjects, it is the duty of the courts to so adjudge.

**3. Same—Abridgment of Privileges and Immunities.**

The keeping of liquors in his possession by a person, whether for himself or for another, unless he does so for the illegal sale of it or for some other improper purpose, can by no possibility injure or affect the health, morals, or safety of the public; and therefore a statute prohibiting such keeping, as does the "Cold Storage Act," is not a legitimate exercise of the police power. It is an abridgment of the privileges and immunities of the citizen, without legal justification, and therefore void.

**4. Same—Local Option—Is Exclusive in the Territory.**

The constitutional provision, article 16, section 20, giving the Legislature authority to enact laws with regard to the adoption of local option by the people, is exclusive of any other method to be pursued by the Legislature for dealing with the question, at least so far as the same territory is concerned, where local option has been adopted. The purpose and effect of the constitutional provision was, and is, to restrict and limit the legislative authority to the powers expressly granted therein, and consequently a legislative act, not within the legitimate scope of this express grant, such as this "Cold Storage Act," unless it is a fair and reasonable exercise of the police power, must be held unconstitutional and void.

APPEAL from Williamson County. Tried below, in chambers, before Hon. W. F. ROBERTSON, County Judge.

The opinion states the case.

*W. W. Nelms*, for relator.—The "Cold Storage Act," chapter 99, Session Laws of the Twenty-fifth Legislature, is null and void because it contains more than one subject and has more than one object; and because the provisions of the act are not set out in its caption. Cannon v. Hemphill, 7 Texas, 208; San Antonio v. Gould, 34 Texas, 74; State v. McCracken, 42 Texas, 385; Giddings v. San Antonio, 47 Texas, 556.

Chapter 99 of the Session Laws of the Twenty-fifth Legislature, entitled "An act to define and prevent cold storage in a local option county, precinct, city, town, or subdivision of a county, and to affix a penalty for running, keeping or maintaining them in such county, city, town, or subdivision," is in pari materia with articles 3384 to 3389 inclusive of Revised Statutes of 1895. Cain v. State, 20 Texas, 355; Napier v. Hodges, 31 Texas, 287; Taylor v. State, 3 Texas Crim. App., 169; Walker v. State, 7 Texas Crim. App., 245; Bryan v. Sundberg, 5 Texas, 418; Silman v. Wolf, 26 Texas, 68.

It is a well settled rule in the construction of statutes, and for the purpose of arriving at the legislative intent, that all laws in pari materia, or upon the same subject matter, are to be taken together, examined, and construed as one law. The law in issue in this case being applicable only to local option counties, etc., and limited in its operation to local option counties, etc., in which the local option law has been adopted, it is clear that the act is a part of, and should be considered and construed with the other local option laws on our statute books.

If this is not true, then the act in issue is void and of no force and effect, because it is beyond the power of the Legislature to pass local or special laws of this nature.

It will therefore be considered that the law in issue is in pari materia with all other laws upon the local option question, and that the Legisla-

ture is controlled in its enactment by the same constitutional limitations which govern it in other local option measures.

The law in issue, chapter 99, Session Laws of the Twenty-fifth Legislature, regular session, is in violation of section 20, article 16, of our Constitution, and is therefore void. Const., art. 16, sec. 20; Cline v. State, 36 Texas Crim. Rep., 320; Holley v. State, 14 Texas Crim. App., 506; Smith v. State, 18 Texas Crim. App., 454; Stallworth v. State, 16 Texas Crim. App., 345; McMillan v. State, 18 Texas Crim. App., 375; Ex Parte Lynn, 19 Texas Crim. App., 293; Steele v. State, 19 Texas Crim. App., 425; Ninenger v. State, 25 Texas Crim. App., 450; Hunt v. State, 22 Texas Crim. App., 398; Ex Parte Kennedy, 23 Texas Crim. App., 79; Stockton v. Montgomery, Dall., 475; Cox v. State, 8 Texas Crim. App., 254.

Section 20 of article 16 of the Constitution of this State is as follows: "The Legislature shall at its first session enact a law whereby the qualified voters of any county, justice precinct, town, city, or [subdivision of a county, as may be designated by the commissioners court of such county], may by a majority vote determine from time to time whether the sale of intoxicating liquors shall be prohibited within the prescribed limits."

In this State all political power is inherent in the people. Each and every co-ordinate branch of our government is created and exists by virtue of the will of the people, expressed in their Constitution. The essential nature and object of constitutional law is restrictive upon the powers of the several departments of the government, and its provisions are mandatory.

Being simply a chart containing limitations upon powers, whenever the Constitution declares how power may be exercised over any subject, then no power can be exercised over that subject in any manner not clearly within the plain import of the Constitution. Mere silence, or failure to provide for some particular feature of the subject, can not be construed into a neglect or omission or an ignoring of that feature. Holley v. State, 14 Texas Crim. App., 513.

In article 16, section 20, of the Constitution, the people have placed a limitation upon the power of the Legislature over this subject. What was the purpose of the people in enacting such a Constitutional provision? Clearly it was that the authority to permit or prohibit the sale of intoxicating liquors should remain with the people, to be exercised by them as a majority of the qualified voters of any county, precinct, etc., might determine. The only power conferred by them on the Legislature, and which they intended should be exercised by the Legislature upon this subject, was the power and duty to enact laws prescribing the time and manner of holding these elections. The authority was even denied the Legislature to prescribe and fix the limits of the territory in which the elections might be held; and the Legislature itself recognized this limitation by submitting to the people in 1891 an amendment to section 20, article 16, of the Constitution, enlarging the power of the Legislature, to enable them to enact a law permitting local option elections to be

held in such subdivision of a county as might be designated by the commissioners courts of such county. This amendment was adopted by a majority vote of the people, and the Legislature has since exercised the power thereby received.

The Constitution having defined the circumstances under which the people may prohibit the sale of intoxicating liquors, under legislative enactment, the rule of construction to be applied to that provision, as laid down by Mr. Cooley (Const. Lim., pp. 78, 79 of sixth edition) is: "When the Constitution defines the circumstances under which a right may be exercised or a penalty imposed, the specification is an implied prohibition against legislative interference to add to the condition or to extend the penalty to other cases."

As seen by its caption, the act in issue is intended to prevent what is therein defined as a cold storage within the prescribed limits of local option territory, and has no reference whatever to a sale. This court has repeatedly held, in the cases cited above, that the power of the Legislature over this subject is limited and restricted by the terms of section 20, article 16, of the Constitution, to the enactment of laws which submit to a vote of the people the single proposition of whether or not the sale of intoxicating liquors shall be prohibited in certain territory. This being true, by what authority did the Legislature pass this act in issue? Boiled down, the effect of this law in issue is to prohibit any person from being in any manner concerned in the keeping of intoxicating liquors, for another, within local option territory, and prohibiting any person from taking or receiving an order for any intoxicating liquor, to be shipped to any person in any manner interested in any cold storage as defined by the act.

The act in issue is retroactive and ex post facto in its nature with reference to that part of the State in which local option was in effect at the time of its passage, and is therefore to that extent void.

The Legislature of this State has never at any time had the power to enact any law restricting or prohibiting the sale of intoxicating liquors since the adoption of the Constitution of 1876. The power was never delegated to the Legislature, but by express constitutional provision was excepted from the other powers conferred, and retained by the people themselves. The Legislature is a creature of the Constitution, and can not rise above it, and no power on earth can call laws upon this subject into effect except the sovereign will of the people, expressed in the manner provided by them.

Should we concede that the Legislature has full power over the question to pass any laws they may deem proper, subject to the vote of the people in certain prescribed limits, still no one would contend that such laws would be effective until the people had voted upon them.

*Mann Trice*, Assistant Attorney-General, for the State.—Relator was remanded to answer a charge of violating what is known as the "Cold Storage Act," the charge being for the soliciting and taking orders for

intoxicating liquors to be shipped to a person who then and there kept and maintained and managed a cold storage in a justice precinct where local option was in force.

It is contended that said act is violative of section 20, article 16, of the Constitution. This clause of the Constitution prescribes the mode and manner of adopting laws to prohibit the sale of intoxicating liquor, and in so far as this subject is to be accomplished, this clause of the organic law furnishes the rule. It does not follow, however, that the adoption of local option exhausts legislative authority and control over the subject matter, i. e., intoxicating liquors. In so far as the adoption of the law is concerned, this clause of the Constitution furnishes a rule and operates as a limitation upon legislative authority to adopt local option in any other manner. It will be noted, however, that there is no limitation upon legislative authority in regard to fixing the penalty or providing generally for the enforcement of such laws. The Legislature is invested with plenary power to fix the penalties and prescribe the procedure in order to make effective the will of the people when it has been declared by them that prohibition shall be enforced in a given locality, and there is no limitation, either express or implied, to be found in the Constitution that will restrict this power. Certainly no limitation by implication could arise. The rule is that limitation upon legislative authority is to be strictly construed, and not to be given effect as against the general power of the Legislature unless such limitations clearly inhibit the act in question. Baldwin v. State, 21 Texas Crim. App., 591; Davidson v. State, 4 Texas Crim. App., 545; Ex Parte Cooper, 3 Texas Crim. App., 489.

Appellant contends that the act in question must be construed and read in pari materia with the local option law, and as it only applies to certain localities, is special, and therefore void. The act operates alike as to all the people within the same territory sought to be affected, and under repeated decisions is not a local or special law within the meaning of the Constitution. Cordova v. State, 6 Texas Crim. App., 207; Handline v. State, 6 Texas Crim. App., 347.

As before stated, the power of the Legislature to prescribe penalties for violations of the local option law is untrameled by any positive or implied limitation, but it is clearly the duty of the Legislature to pass such laws as will render effective the will of the people in adopting local option. If, then, the act be in pari materia with the local option law, it is simply in aid of such law and designed to more effectually accomplish the purpose for which local option was adopted. If viewed in this light both acts should stand, the rule being as follows: "Where enactments separately made are read in pari materia, they are treated as having formed in the minds of the enacting body parts of a connected whole, though considered by such body at different dates, and under distinct and varied aspects of the common subject. Such a principle is in harmony with the actual practice of legislative bodies, and is essential to give unity to the laws and connect them in a symmetrical system. Such statutes

are taken together and construed as one system, and the object is to carry into effect the intention. It is to be inferred that a code of statutes relating to one subject was governed by one spirit and policy, and was intended to be consistent and harmonious in its several parts and provisions." Suth. Stat. Con., sec. 288.

Because the Legislature has affixed a general penalty for a sale of intoxicating liquor it does not follow that its power was thereby exhausted over the entire subject of intoxicating liquor in local districts, but it might go further and prescribe different penalties under different circumstances. For instance, it might impose a greater penalty for a sale on Sunday, or for a sale in a private house, than in an ordinary saloon, or vice versa. Black on Intox. Liq., sec. 548; 11 Am. and Eng. Enc. of Law, 605, 606. The question as to what penalties should be imposed, or what legislation adopted to effectually enforce the local option law, is one peculiarly addressed to legislative discretion, and if, in the exercise of such discretion, legislative restrictions should be thrown around the handling, storing, or keeping of intoxicating liquor, such acts should be sustained as in furtherance of the enforcement of prohibition. Bare possession with intent, etc., can be made a crime by the Legislature. Black on Intox. Liq., sec. 58.

If it be conceded that section 16 of article 20 of the Constitution furnishes the rule as to legislative action in reference to prohibiting the sale of intoxicating liquor, it by no means follows that this would operate as a limitation upon legislative authority in reference to all manner of legislation in regard to intoxicating liquor. Following the rule that the limitations imposed must be strictly construed and not given effect as against the general power of the Legislature, the limitation could not extend beyond legislation in regard to sales of intoxicating liquor. Therefore, the power to regulate the handling, storing, carriage, or use of intoxicants would be unimpaired. This power is part of the police power of government, and is inherent. Black on Intox. Liq., secs 39-65.

Again, in reference to that portion of the statute upon which this prosecution is predicated. If the Legislature has power to prohibit sales (this is conceded), would it not have the power to enact laws designed to circumvent a sale by imposing a penalty upon the purchaser of the inhibited article, or to impose a penalty against all persons for designated acts in furtherance of an unlawful sale? Ordinarily the inhibition and penalty is directed against the seller. But it seems clear that it is within legislative discretion to punish the buyer as well. Black on Intox. Liq., sec. 381.

It is the evident purpose of the act to aid in the better enforcement of the local option law, and to punish infractions thereof. There is no express or implied prohibitions against any of its provisions to be found in the organic law, and it should be upheld.

The title to the act in question is to "prevent cold storage in local option precincts, city, town, or subdivision of a county, and to affix a penalty for running, keeping, or maintaining them in such county, city,

town or subdivision." After defining the cold storage and denouncing the keeping or being interested in keeping the same, it is made unlawful for any person to solicit or take orders for any intoxicating liquors whatever, to be sent or shipped to any person who may keep, maintain, or manage the cold storage. This is germane to the main subject treated, and sufficiently indicated by the caption. The article of the Constitution requiring the subject matter of legislation to be embraced in the title has been liberally construed and held that the generality of the title is no objection to an act, so long as it is not made to cover legislation incongruous in itself, and which by no fair intendment can be considered as having the necessary or proper connection. Floeck v. State, 34 Texas Crim. Rep., 314; Ex Parte Mabry, 5 Texas Crim. App., 28; English v. State, 7 Texas Crim. App., 171.

HENDERSON, Judge.—Appellant was charged by information in the County Court of Williamson County with violating what is known as the "Cold Storage Act." He was arrested under said information, and sued out a writ of habeas corpus before the county judge, who, after hearing the case, remanded the applicant to the custody of the sheriff to answer said information; and from said order defendant prosecutes this appeal.

The contention of appellant is that the Act of the Twenty-fifth Legislature (page 128) entitled "An act to. define and prevent cold storage in a local option county, precinct, city, town, or subdivision of a county, and to affix a penalty for running, keeping, or maintaining them in such county, city or town, or subdivision," is unconstitutional and void. We understand the grounds of his contention to be that said act is void (1) because the caption of said act is not in accordance with section 35 of article 3 of the Constitution; (2) because the act itself is an invasion of the rights of private property, not authorized by the Constitution; (3) that said act is violative of section 20 of article 16 of our State Constitution (said section known as the "Local Option Clause").

Without quoting in extenso the act in question, we will condense the provisions of said act. In section 1 an attempt is made to define what a cold storage is. It provides: (1) That any building, etc., in any local option district, which may be kept or maintained for the purpose of storing, cooling, or keeping intoxicating liquors, etc., for others, is a cold storage; (2) or any building, etc., in any local option district, which shall be used or kept to store or keep for any other person than the owner any intoxicating liquors, etc., is a cold storage; (3) or any such building, etc., in any local option district, where the agent, owner, etc., may solicit or take any orders from others for intoxicating liquors, to be sent or delivered to such owner, etc., for the person giving such order, shall constitute a cold storage. The second section of said act provides, substantially: (1) That any owner, agent, etc., who shall keep, etc., any cold storage house, or be interested in keeping the same, in any local option district, shall be guilty of a misdemeanor, etc. (2) Any person who shall solicit or take orders for any intoxicating liquors to be sent or shipped to.

any person who may keep, etc., or be interested in the keeping, etc., of any cold storage in any local option district, shall be guilty of a misdemeanor, and fined not less than $100 nor more than $500, and, in addition thereto, shall be imprisoned in the county jail not less than twenty-five nor more than one hundred days. Section 3 provides, if any owner, etc., of any cold storage, where local option is in force, shall solicit or take any order for intoxicating liquors to be shipped or sent into any such local option district, and such intoxicating liquors shall be shipped or sent therein by reason of such order, that the same shall constitute a sale in such local option district.

The information against appellant charges that, in a local option district, "he was the owner and proprietor and the agent and employe of the owner and proprietor of a cold storage, and was interested in the keeping, maintaining, and managing a cold storage within said justice precinct, and that he did then and there solicit and take orders for intoxicating liquors to be shipped to a person who then and there kept, maintained, and managed a cold storage, and to be shipped to the agent and employe of a cold storage, and in the care of the proprietor, agent, and employe of a cold storage."

We are not inclined to regard said act as violative of section 35 of article 3 of the Constitution, as, in our opinion, the title sufficiently embraces the subject matter of the act. The effect of the act, however, is to make criminal the act of any person who may keep or maintain a house in a local option district for the storage, keeping, or cooling of intoxicating liquors for others, or the owner, proprietor, etc., of any building, etc.. which shall be used to store such intoxicating liquors for others than the owner, for it makes criminal the act of any person who, as owner, proprietor, etc., may solicit orders from others for intoxicating liquors to be sent or delivered to such owner, etc.; that is, it proposes to make criminal the act of keeping or storing any intoxicating liquors for others than the owner of such building, in any house, building, etc., in any district where local option is in force.

If we had no provision of the Constitution on the subject of local option, we believe that this act would be unconstitutional, as an invasion of the fundamental right of a citizen to the free use and exercise of property, and that the Legislature would not be authorized, under the guise of a police regulation, to so interfere with the enjoyment on the part of the citizen of his property rights. Intoxicating liquors are regarded as property, both in the State and nation, and it is not necessary to refer to acts of legislation or decisions of the courts in which intoxicating liquors are so regarded. Furthermore, we have a distinct constitutional provision on the subject of the power of the Legislature in regard to the liquor traffic. That constitutional provision is as follows: "The Legislature shall, at its first session, enact a law whereby the qualified voters of any county, justice precinct, town, city, or such subdivision of a county as may be designated by the commissioners court of such county, may, by a majority vote, determine from time to time whether the sale of intoxicat-

ing liquors shall be prohibited within the prescribed limits." Const., art. 16, sec. 20. It occurs to us that this expression of the will of the people on the subject is exclusive of any other method to be pursued by the Legislature. Whatever may be said as to the power of the Legislatures of other States, with no express provisions of their Constitutions on this subject, to legislate in regard to the liquor traffic under the general police power, the same does not apply with us. We have an express provision on the subject, and that provision was intended to prescribe a method of dealing with the question, and to exclude any other rule or method, at least so far as local option territory is concerned. See Holley v. State, 14 Texas Crim. App., 505; Stallworth v. State, 16 Texas Crim. App., 345; Steele v. State, 19 Texas Crim. App., 425; Ninenger v. State, 25 Texas Crim. App., 449.

In State v. Gilman (West Virginia), reported in 10 Southeastern Reporter, 283, almost the identical question here presented came before that court; and the views of the learned judge who delivered the opinion are so well expressed that we give them in full: "Has the Legislature of this State the constitutional power to make such an act a crime? The fourteenth amendment to the Constitution of the United States declares: 'No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States;' and the same amendment makes all persons born or naturalized in the United States citizens thereof. It is conceded that the 'privileges and immunities' here protected are such only as are in their nature fundamental—such as belong of right to the citizens of all free governments, and which have at all times been enjoyed by the citizens of the several States of the Union, from the time of their becoming free, independent, and sovereign. What these fundamental rights are it is not easy to enumerate, the courts preferring not to describe and define them in a general classification, but to decide each case as it may arise. The following, however, have been held to be embraced among them: 'Protection by the government; the enjoyment of life and liberty, with the right to acquire and possess property of every kind, and to pursue and obtain happiness and safety, subject to such restraints as the government may justly prescribe for the general good of the whole.' Washington, J., in Corfield v. Coryell, 4 Wash. C. C., 380, Fed. Cas., No. 3230. Connor v. Elliott, 18 How., 591; In re Parrott, 6 Sawy., 349, 1 Fed. 481, 6 Meyers Fed. Dec., sec. 1000; Butchers' Union Slaughter-house Co. v. Crescent City Livestock Landing Co., 111 U. S., 746, 4 Sup. Ct., 652. These are inalienable and indefeasible rights, which no man, or set of men, by even the largest majority, can take from the citizen. They are absolute and inherent in the people, and all free governments must recognize and respect them. Therefore it is incumbent upon the courts to give to the constitutional provisions which guaranty them a liberal construction, and to hold inoperative and void all statutes which attempt to destroy or interfere with them. Cool. Const. Lim. (35), 44. It can hardly be questioned that the right to possess property is one of these rights, and that that right embraces the

privilege of a citizen to keep in his possession property for another.  It is not denied that the keeping of property which is injurious to the lives, health, or comfort of all persons may be prohibited under the police power.  The maxim, 'Sic utere tuo ut alienum non laedas,' being of universal application, it must, of course, be within the range of legislative action to define the mode and manner in which every one may so use his own as not to injure others.  But it does not follow that every statute enacted ostensibly for the promotion of these ends is to be accepted as a legitimate exercise of the police power of the State; and much less is such the case when the statute is merely claimed by its defenders to be intended for that purpose.  The court, in its opinion in Mugler v. Kansas, says: 'The courts are not bound by mere forms, nor are they to be misled by mere pretenses.  They are at liberty—indeed, are under a solemn duty—to look at the substance of things, whenever they enter upon the inquiry whether the Legislature has transcended the limits of its authority.  If, therefore, a statute purporting to have been enacted to protect the public health, the public morals, or the public safety has no real or substantial relation to those objects, or is a palpable invasion of rights secured by the fundamental law, it is the duty of the courts *to so adjudge, and thereby give effect to the Constitution.*' 123 U. S., 661, 8 Sup. Ct., 273. The keeping of liquors in his possession by a person, whether for himself or for another, unless he does so for the illegal sale of it, or for some other improper purpose, can by no possibility injure or affect the health, morals, or safety of the public; and therefore the statute prohibiting such keeping in possession is not a legitimate exercise of the police power.  It is an abridgement of the privileges and immunities of the citizen, without any legal justification, and therefore void.  But it seems to me the said  provision of the statute is in violation of that provision of our State Constitution which declares that 'laws may be passed regulating or prohibiting the sale of intoxicating liquors within the limits of this State.' Art. 6, sec. 46.  While it is admitted to be a well-settled principle that the Legislature has the same unlimited power in regard to legislation which resides in the British Parliament, except where it is restrained either by the State or Federal Constitutions, still it is equally true that these constitutional limitations are not confined to express inhibitions, for there are but few positive restraints upon the legislative power contained in the Constitution.  The third article, or 'Bill of Rights' lays down the ancient limitations which have always been considered essential in a constitutional government, whether monarchial or popular; and there are scattered through the instrument some other express provisions in restraint of legislative authority.  But the affirmative prescriptions *and general arrangements of the Constitution are far more fruitful* of restraints upon the legislative power.  Every positive direction contains an implication against everything contrary to it, or which would frustrate or disappoint the purpose of that provision.  The frame of the government, the grant of legislative power itself, the organization of the executive authority, and the erection of the principal courts of justice,

create implied limitations upon the law-making authority, as strong as though a negative was expressed in each instance. Cool. Const. Lim., 87; People v. Draper, 15 N. Y., 543. If the people had not made the provision above quoted a part of the Constitution, the Legislature would, so far as that instrument is concerned, have had plenary and unrestricted authority to deal with liquors in any manner it chose to do. But the people, by declaring that 'laws may be passed regulating or prohibiting the sale of intoxicating liquors,' according to the principles we have announced, imposed a restraint upon this plenary power. By granting an express authority to the Legislature to regulate or prohibit the sale, there is an implied inhibition to the exercise of any authority in respect to that subject which is not embraced in the grant. This rule is simply an application of the old maxim, 'Expressio unius est exclusio alterius,' which Lord Bacon concisely explains by saying: 'As exception strengthens the force of a law in cases not excepted, so enumeration weakens it in cases not enumerated.' The express power here given to regulate or prohibit the sale of liquors, unless it was intended to limit the legislative authority, would render this provision of the Constitution wholly nugatory and useless, because, as we have seen, without this provision the Legislature would have had plenary power over the whole subject. It could not only have legislated in respect to the prohibition and sale of liquors, but in all other respects. It seems to me, therefore, that the purpose and effect of this constitutional provision was and is to restrict and limit the legislative authority to the powers expressly granted therein—that is, to the power to regulate or prohibit the sale of liquors; and consequently a legislative act not within the legitimate scope of this express grant, unless it is a fair and reasonable exercise of the police power, must be held unconstitutional and void."

We entirely concur with the principles enunciated in the foregoing opinion, and their application to the question in this case is obvious; and we accordingly hold the attempt of the Legislature to make the keeping of liquor by one citizen for another, in a local option territory, whether in a house, tent, or anywhere else, and whether for a consideration or without a consideration, a crime, or the attempt on the part of the Legislature to make it criminal for a person who may be the owner or proprietor of any building, etc., in a local option territory, to solicit or take an order from another person for intoxicating liquors, to be sent or delivered to the proprietor or owner of such house for the person giving such order, to be without authority of law, as violative of the citizen's fundamental right to us his own property as he pleases, not injuring another person; and that it is not competent for the Legislature, under its power of police regulation, to impair the legal ownership and holding of one's property, either by himself or by another person.

We further hold that the act in question, applicable alone to local option territory, is violative of the express provisions of our Constitution on the subject. If this law could be enforced in such local option terri-

tory, then a minister or any member of any of the various churches who should hold or keep wine at his residence or any house under his control, for the purpose of being used by the members of his church in the administration of the Lord's Supper, would be guilty of keeping a cold storage, for he would come under the terms of the law which inhibits the keeping of intoxicating liquors for others. This illustration will serve to show the futility of legislation to hamper or prevent the use or ownership of one's property for a purpose that is not inhibited by the constitutional provision on the subject. That provision inhibits the sale only and was evidently intended by the people to mark the limitation of power of the Legislature on that subject. The people, in saying that a sale of intoxicating liquors might be prohibited, deny to the Legislature the power to otherwise interfere with its use; and the cold storage act was an attempted interference with the use of intoxicating liquors in local option territory, not authorized or warranted by the Constitution, and we accordingly hold it illegal and void, and it is therefore ordered that the relator be discharged.

*Reversed, and relator ordered discharged.*

HURT, Presiding Judge, absent.