STATE *v.* PHILLIPS.

[67 South. 651.]

1. CONSTITUTIONAL LAW. *Intoxicating liquors. Due process of the law. Social clubs.*

Laws 1914, chapter 127, section 4, which prohibits the carrying of intoxicating liquors into social clubs, does not unduly limit the use of property contrary to Constitution 1890, section 14, and Const. U. S., Amend. 14, section 1, guaranteeing due process of law, but is a proper exercise of the "police power" which extends to whatever is held by the prevailing morality or strong and preponderant public opinion to be greatly and immediately necessary to the public welfare.

2. SAME.

Nor does such act deprive the members of social clubs of the equal protection of the laws, since the act is beneficial, rather than detrimental, to social clubs.

3. STATUTES. *Sufficiency of title. Legislative question.*

The sufficiency of the title of a statute is a matter for the legislature only, under Constitution 1890, section 71, providing that the title of a statute "ought" to indicate clearly its subject-matter.

APPEAL from the circuit court of Leflore county.

HON. F. E. EVERETT, Judge.

T. J. Phillips was convicted by a justice of the peace of unlawfully carrying liquor into a social club; on appeal a demurrer was sustained to the affidavit and the state appeals.

The facts are fully stated in the opinion of the court.

*Geo. H. Ethridge,* for the state.

If individuals may carry liquors to clubs and the state is powerless to prevent their so doing, why should they not be authorized to carry such liquors and use them out in other gatherings, or even carry them to church and use them at church. The authorities on this specific point involved are not numerous but almost every conceivable phase of the liquor question has been passed on by the courts and it has always, without exception, been held that the power of the state to enact such laws have been upheld. In the state of Georgia, the constitutionality of the statute prohibiting the carrying of intoxicating liquors to church was tested under a statute that was very drastic in its terms and under circumstances that would naturally strongly appeal to any court looking at the personal liberty of the citizen abridged by such statute. In the Georgia statute, a person was prohibited from carrying liquors to church only with the exception that a physician might carry such as was necessary for his practice and might administer whiskey to a person as a medicine. The person indicted for violation of this statute carried whiskey to church on the advice of a physician for the use of his wife. The buggy in which the whiskey was kept

was situated one hundred and fifty or two hundred feet from the church. The physician advised that the whiskey was necessary because of certain infirmities of the wife of the defendant and it was strongly insisted that this was a case of necessity and that it was unconstitutional to deprive a person of whiskey under the circumstances, but the court held that the statute was constitutional and upheld the law.

It is difficult to see any reason why the Federal Constitution would impose restrictions upon state authority that were not imposed upon Federal authority by the Constitution of the United States and the reports of the decisions of the Federal courts and the Federal statutes show that the Federal authority has uniformly and consistently upheld the power of Congress to prohibit the carrying of liquors or the using of them to restricted places. One of the most recent cases coming up for consideration under such power of Congress is *Perrin* v. *U. S.* in 232 U. S. at page 478, also reported in 58 Law Edition, 691. *U. S.* v. *Holliday,* 3 Wall, 407, 18 L. Ed. 182; *U. S.* v. *Sutton,* 215 U. S. 291, 54 L. Ed. 207; 30 S. C. 116; *Hollowell* v. *U. S.,* 221 U. S. 317, 55 L. Ed. 750, 31 S. C. 587; *Ex parte Webb,* 225 U. S. 663, 56 L. Ed. 1248; *U. S.* v. *Wright,* 229 U. S. 226, 57 L. Ed. 1160, 33 S. C. 630.

Many years ago, the state of Kansas enacted stringent prohibition laws absolutely prohibiting the manufacture and sale within the state of Kansas of all intoxicating liquors. The question was raised as to whether the fourteenth amendment did not prohibit the states passing and enforcing such laws but the court, in the case of *Mugler* v. *Kansas* reported in 31 Law Edition, at 205, and in 123 U. S. 617, upheld fully the power of the state to pass such laws. In the opinion in this case, the court quoting from the opinions of the court in preceding cases and especially from the case of *Bartemeyer* v. *Iowa,* 85 U. S. 129, 21 L. Ed. 929.

See, also, *Glozza* v. *Tierman,* 148 U. S. 657, 13 S. C. 721, 37 L. Ed. 599; *State* v. *Bixman,* 162 Mo. 1, where the Missouri court held that the fourteenth amendment was never designed to interfere with the exercise by the state of the right to make or enact police regulations to promote the health, peace, morals, education and good order of its people. See, also, *Vance* v. *Vandercook Co.,* 170 U. S. 438, 42 L. Ed. 1100; *Williams* v. *State* (Ala.), 62 So. 371, 60 So. 903.

Since the passage of the Wilson Act in 1892, the powers of the state to deal with intoxicating liquors obtains from the delivery to the purchaser by the seller, and since the passage of that Act, the original right of persons under Federal law have been materially changed. As illustrating the power of the states in the matter of passing regulations, it was held by the supreme court of Maine that a person could not advertise intoxicating liquors within the state and that too, whether the party offering the liquors for sale lived within another state or not. See *State* v. *Bass Publishing Company,* 104 Me. 288, 71 Atl. 894. The case of the United States court already cited demonstrated conclusively that the right to acquire, use and sell intoxicating liquors is not an inherent right of the citizen of the United States and the states have uniformly restricted the sellers of intoxicating liquors to a class of people who, in the judgment of the state authorities, would be least liable to violate the state laws regulating it, and all of the states have prohibited the sale of liquors to certain classes of people. If it were a natural right that was above lawful regulation by the state within the constitutional provisions relied on in this case, the state could not restrict the sale and use so as to discriminate between persons.

*Wells, May & Sanders* and *J. A. Tyson,* for appellee.

The offense with which appellee was charged by the affidavit in this case was one which was based upon

section 4, of chapter 127, of the Laws of Mississippi of 1914, and the questions raised by the demurrer in the court below were directly on the point of whether or not said section 4 was violative of article 1 of the fourteenth amendment to the Constitution of the United States as well as of article 3 of section 14 of the Constitution of Mississippi.

There was also presented the proposition that said section 4 of chapter 127 was violative of section 71 of the Constitution of Mississippi, which says that: "Every bill introduced into the legislature shall have a title, and the title ought to indicate clearly the subject-matter or matters of the proposed legislation."

Our position then, in this court is, that said section 4 of said chapter 127 of the Laws of Mississippi of 1914, is unconstitutional and void, because it contravenes: First. The fourteenth amendment to the Constitution of the United States, as well as article 3, section 14, of our state Constitution. Second. Section 71 of the Constitution of our state, which relates to the title to be given the bills introduced into the state legislature.

In this order we will present the two propositions, and since the provisions of the fourteenth amendment to the Constitution of the United States in regard to the privilege and immunity clause, and those of article 3, section 14, of our state Constitution are, in effect, identical so far as they relate to the case at bar, a discussion of whether or not said section 4 of said chapter 127, is violative of said immunity clause would be, to the same degree, pertinent if applied to said article 3 of section 14 of our state Constitution.

While, so far as our investigation has revealed, there has been no case reported which is on all fours with the one here, still there have been several cases, in which the principles of law involved have been applied to different states of facts; and the principles so an-

nounced, as well as the reasoning therefor, show them to be conclusive if these holdings are to be regarded as authoritative precedents when applied to the case at bar. *State of N. C.* v. *Williams*, 17 L. R. A. (N. S.) 299-304; *State of W. Va.* v. *Gilman*, 6 L. R. A. 847; *Ex parte Brown*, 70 Am. St. Rep. 743; *State of N. C.* v. *Jake Williams*, 17 L. R. A. (N. S.) 299; *Commonwealth* v. *Campbell*, 24 L. R. A. (N. S.) 172; *Titsworth* v. *State*, 101 Pac. 288; *Eidge* v. *Bassamer*, 26 L. R. A. (N. S.) 394.

The differences between carrying liquors to a "social club" and to other places where persons are accustomed to gather together, are not such differences "as in the nature of things furnish a reasonable basis" upon which to enact legislation of this character; the rule of "Equality requires the same means and methods to be applied impartially to all the constituents of each class, so that the law shall operate equally and uniformly upon all persons in similar circumstances." *Nichol* v. *Ames*, 42 U. S. (L. Ed.) 786-794; *Mogoun* v. *Ill. Trust*, 42 U. S. (L. Ed.) 1037; *Gulf Ref. Co.* v. *Ellis*, 41 U. S. (L. Ed.) 666; *Adams* v. *Standard Oil Co.*, 53 So. 692; *Ballard* v. *Oil Co.*, 81 Miss. 507.

This rule of equality is infringed by this law because in selecting social clubs or organizations a penalty is applied in a partial way to one constituent of a large class.

Reverting to the third contention that section 4, under discussion contravenes, the provisions of section 71 of the state Constitution, we must confess that in the case of *Mayor* v. *City of Jackson*, 59 So. 873, this court has apparently laid down the rule that, notwithstanding the use of the word "ought" in said section 71, the sufficiency of the title was nevertheless left within the discretion of the legislature. If such was intended to be established by that holding, as an absolute rule of construction in every instance where the validity of an

act of the legislature was brought in question on ac-, count of the insufficiency of title, then, that decision is certainly conclusive against the contention we make here. However, an examination of the act of the legislature, attacked in that case, fails to show anything in the body of said act which is such wide variance with the subject-matter, as indicated in the title, as would have justified the declaring void and unconstitu- tional of the entire act creating the commission form of Government. The body of that act presented an entirely new scheme of Government, and provided for a change to same from the old scheme theretofore pre- vailing, and which scheme was complete in everything, and in which no provision was set forth which did not bear a direct and perfectly natural relation to what was set forth in the title thereto. It was evidently an effort to invoke a very strained and extremely narrow construction which was made by appellants in that case, as it seems to us that it would be almost impossi- ble and certainly entirely impracticable to more com- pletely, perfectly and concisely frame a title to an act embracing so many details as were necessary to consum- mate such a complete scheme of Government, as was done by that act. We think the holding of the court in this decision was eminently correct, but we are in much doubt as to whether or not it was intended to be held that in no case where the question of the insuffi- ciency of the title to a legislative act is raised under section 71, will our court consider same, provided only such act has a title of some sort.

Unless this rule is to be considered to have been es- tablished in that case, we think our contention here is undoubtedly sound, since the title to chapter 127 of the Laws of Mississippi of 1914, relates only to the ship- ment and delivery of liquors, the filing of statements for such shipments, the prescribing of penalties for violation of the act, the conferring of jurisdiction upon

the courts for violation of the act, and otherwise regulating the procedure in relation to such shipments and the imposition of penalties therefor.

Section 4, which we contend contravenes the constitutional provisions of section 71, is one which relates alone to the carrying of liquor to, and the keeping of it, in a "social club for use therein," and, inasmuch as such liquors might have been lawfully carried and kept therein, without regard to shipment of same, such carrying and keeping bears no relation whatever to the subject-matter of the balance of the act or to the subject-matter as indicated in the title thereto. The offense as enumerated in said section 4, has not the remotest connection with the general scheme carried out in the act since there is not another section or line in the act but which bears directly and only upon the shipment of liquors. The subject-matter of said section 4, is entirely foreign, not only to the subject-matter of all other sections throughout the body of the act itself, but is such as could not by the most elastic construction given said title, be said to be "clearly indicated therein."

As was wisely held by Judge CAMPBELL in the two cases of *Hunt* v. *Wright*, 70 Miss. 298, and *Ex parte Wren*, 63 Miss. 512, where the question of the constitutionality of an act is raised on some constitutional provision which necessitates "an exploring of the legislative journal to see if the directions of the Constitution were observed," this court would not interfere; but Judge CAMPBELL said further in regard to certain sections under article 4 of our Constitution which is headed "Rules of Procedure" that: "Some of the sections thereunder are not mere rules of procedure addressed to, and ending with the legislature," and also he said further that "every act which bears on its face evidence of disregard of the Constitution, invites, and must receive, the condemnation of all who

were called on to deal with it, and that is the test."
*Hunt* v. *Wright*, 70 Miss. 298; *Ex parte Wren*, 63 Miss.
512.

An act of the legislature is unconstitutional when the
title relates only to the "sale" of intoxicating liquors
while the body of the act prohibits the giving away
of such liquors, which gift is made solely as a matter
of courtesy or hospitality. This was held by the supreme
court of Missouri, and there was no difference in the
constitutional provisions under consideration there, and
that one under consideration here, except that the word
"shall" was used in the Missouri Constitution instead
of the word "ought," as is used in our Constitution.
We cite the case as being a well-reasoned one from
our standpoint, and as being one in which the dif-
ference between the subject-matter of the legislation
and such subject-matter as was indicated in the title,
was not nearly so great as in the case at bar. *State* v.
*Fulks*, 15 L. R. A. (N. S.) 430.

COOK, J., delivered the opinion of the court.

Appellee was convicted by a justice of the peace up-
on an affidavit charging that he—

"on or before the 23d of November, 1914 unlawfully did
then and there carry to the club of the Benevolent Pro-
tective Order of Elks, the same then and there being a
social club and organization, for the use therein as a
beverage, vinous, spirituous, malt, alcoholic, and intox-
icating liquor, to wit, one bottle of whiskey then and
there containing more than one-half of one per cent of
alcohol."

Appellee appealed to the circuit court and there de-
murred to the affidavit, which demurrer was sustained.
From the judgment of the circuit court sustaining ap-
pellant's demurrer, the state prosecuted this appeal.

This prosecution was founded upon section 4, chap-
ter 127, Laws Mississippi 1914, which read thus:

"That no intoxicating liquor within the meaning of this act shall be kept in any locker or other place in any social club or organization for use therein, and all persons carrying such liquor to such club or locker for use therein or keeping the same for such use shall be guilty of a violation of this act."

The demurrer of defendant below was sustained upon the theory that said section is unconstitutional because it contravenes the fourteenth amendment to the Constitution of the United States, as well as article three, section 14, of our state Constitution.

It was also urged below, and here, that chapter 127, Laws 1914, is void because it violates section 71 of the state Constitution, referring to the title of bills introduced in the state legislature.

The position of appellant, briefly stated, is that the statute under review recognizes that intoxicating liquors are property, and that one may lawfully own, possess, and use the same, and that the limitation upon this right imposed by the statute bears no reasonable relation to the policy of the state to suppress the sale of intoxicants, and also that the statute is discriminatory and denies to the persons involved equal protection of the laws. For these reasons, it is claimed that the statute violates the fourteenth amendment of the Constitution of the United States and article 3, section 14, of our own state Constitution. To support his contention appellee cites the following cases, viz.: *Eidge* v. *City of Bessemer*, 164 Ala. 599, 51 So. 246, 26 L. R. A. (N. S.) 394; *State* v. *Gillman*, 33 W. Va. 146, 10 S. E. 283, 6 L. R. A. 847; *Ex parte Brown*, 38 Tex. Cr. R. 295, 42 S. W. 554, 70 Am. St. Rep. 743; *State* v. *Goodwill*, 33 W. Va. 179, 10 S. E. 285, 6 L. R. A. 621, 25 Am. St. Rep. 863; *State* v. *Williams*, 146 N. C. 618, 61 S. E. 61, 17 L. R. A. (N. S.) 299, 14 Ann. Cas. 562; *Commonwealth* v. *Campbell*, 133 Ky. 50, 117 S. W. 383, 24 L. R. A. (N. S.) 172, 19 Ann. Cas. 159; *Ex parte Mon Luck*, 29 Or. 421,

44 Pac. 693, 32 L. R. A. 738, 54 Am. St. Rep. 804; *Noble* v. *Haskell,* 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1064, Ann. Cas. 1912A, 487.

*Eidge* v. *City of Bessemer, supra,* decided by the supreme court of Alabama, it seems to us, is the strongest case decided by any court in favor of appellee's view of the law. In other words, this case carries the sanctity of the right to possess and use property much further than has any other court of last resort. This case was decided by a divided court; and, with the utmost deference to the opinion of the majority, we think the dissenting opinions are more convincing than the opinion of the court. The court in that case had under consideration an ordinance of the city of Bessemer, the first section of which is in these words, viz.:

"Be it ordained by the city council of Bessemer as follows: That it shall be unlawful and constitute a violation of this ordinance, if any person, firm, or corporation in the city of Bessemer, have or keep on storage or deposit, or have therein, any vinous, spirituous, or malt liquors, or intoxicating beverages, or any beverage which is a product of maltace or gencase as a substantial ingredient, in or at any place where any drinks or beverages are sold or kept for sale."

The second section of the ordinance provided that the above section should not apply to druggists of the class described thereby.

As we interpret the opinion of the court, the gist of the court's reasoning may be found in the following words of the opinion, viz.:

"It can be justified only, if at all, on the ground that it sustains some reasonable relation to the prohibition law in the way of preventing evasions of that law by trick, artifice, or subterfuge, under guise of which that law itself is violated. But it has no such relation. It undertakes to prohibit the keeping, in any quantity and for any purpose however innocent, of intoxicating li-

quors and beverages in places which are innocent in themselves.''

It seems clear to us that the court entirely underestimated the ability and cunning of the average illicit dealer in intoxicating beverages. The city council was much wiser, in our opinion, to the devious ways of this class of criminals. Given a ''pop stand'' or a soda fountain the blind tiger is practically immune from prosecution under any laws against the sale of intoxicating liquors. It would seem clear to us that violators of the law would have filed a dissenting opinion in that case, and could have pointed out with precision wherein the court erred, when it said that this ordinance sustains no reasonable relation to the prohibition law.

The dissenting opinion, by Judge McClellan, points out the reasonable relation of the ordinance to the prohibition law in a much clearer way than we can hope to do, and we refer to his opinion and adopt the same as our own.

In *State* v. *Gillman, supra,* the supreme court of West Virginia was passing upon the validity of a statute of that state which denounced as a misdemeanor the keeping in possession of spirituous liquors of another by any person not the owner who had not obtained a license therefor. The decision went off upon the court's interpretation of the state Constitution, which declared ''laws may be passed regulating or prohibiting the sale of intoxicating liquors.'' The court invoked the maxim *''Expressio unius est exclusio alterius,''* holding that, the statute not having reference to the prohibition or sale of liquors, the legislature was without power to pass the statute. The court also held that the statute could not be upheld as coming within the police power of the state. We do not consider this decision of much value in this case, because the statute there reviewed is radically and substantially different

109 Miss. 3

from the statute we are considering, and besides the question before that court was complicated by the Constitution of West Virginia.

*Ex parte Brown*, 38 Tex. Cr. R. 295, 42 S. W. 554, 70 Am. St. Rep. 743, a Texas case, does not seem to be pertinent to this case. In that case the Texas court was construing a statute in the light of the state Constitution, referring directly to the question of the prohibition of the sale of intoxicants in local option territory. Referring to the constitutional provision, the court said:

"It occurs to us that this expression of the will of the people on the subject is exclusive of any other method to be pursued by the legislature. Whatever may be said as to the power of the legislatures of other states, with no express provisions of their Constitutions on this subject, to legislate in regard to the liquor traffic under the general police power, the same does not apply with us: We have an express provision on the subject, and that provision was intended to prescribe a method of dealing with the question, and to exclude any other rule or method, at least so far as local option territory is concerned."

The court then quoted in full the opinion of the supreme court of West Virginia in *State* v. *Gillman*, *supra*, adopting and indorsing the same. The two courts were in accord, because of the similarity of their state Constitutions. It will be seen that the Texas case is expressly confined to provisions of the Constitution of Texas, and what would have been the decision of that court had there been no such constitutional provision it is, of course, impossible to conjecture.

*State* v. *Goodwill, supra,* we do not believe has any application here, except as a general statement of the principle requiring classification of persons or corporations to be affected by the statute to be reasonable and not discriminatory, which principle we will discuss later.

*State v. Williams, supra,* a North Carolina case, we here copy the syllabus, which indicates the question decided, viz.:

"Spirituous, malt, or vinous liquors are property within the meaning of the Constitution, when its manufacture or sale is lawfully prohibited by statute; and when the legislature makes it an indictable offense to carry more than a certain quantity into a specified county, within a limited time, prohibiting its sale and not prohibiting its use, but authorizing its use for certain purposes, it is unconstitutional, for that it is taking of property without due process of law, and not within the police power of a state."

This case was also decided by a divided court. We mention this fact for the purpose of showing that decisions along this line have usually found some judge of the court who dissents. We think the dissenting opinion in this case propounds a question hard to answer, and we quote the same, because, in our opinion it demonstrates the fallacy of the court's reasoning, viz.:

"In limiting each person to a half gallon per day for his own use (for the law permits no sale) the legislature was not niggardly. Besides, if the manufacture, though exclusively for one's own use and out of one's own apples and peaches, in the county can be forbidden by statute without breaking the Constitution, why cannot the importation of the same article across the county line, in a greater quantity than a half gallon per day, even for one's own use, be prohibited by the same power? The truth is that, the legislature having jurisdiction of the subject, the limitations upon its exercise rest in the wisdom and sound judgment of the legislature, subject only to review by the people, not by the courts."

*Commonwealth* v. *Campbell, supra,* a Kentucky case, the charge against the defendant was bringing intoxi-

cating liquors into a town, upon his person or as his personal baggage, exceeding a quart in quantity. This prosecution was based upon a town ordinance making it unlawful to bring into the town intoxicating liquors exceeding one quart in quantity. This case involved the construction of the state Constitution, and the court held that, inasmuch as the Constitution formulated a system by which the sale of intoxicating liquors throughout the state was to be regulated by general laws it could not be contended, with any show of reason, that the framers of the Constitution intended to leave the question of the retailing of liquor in a given district to a vote of a majority of the voters, and yet leave it in the power of the legislature upon its own motion to prohibit the possession of liquor by the citizen. True, the court said much more than this. The court discussed the natural and inalienable rights of man, but after they reached the conclusion that the legislation was in violation of the state Constitution, referring to the particular power under review, there was nothing more to be said.

It is claimed by all the cases wherein the precise point now before this court was involved the power to enact legislation of this character was denied. We have endeavored to analyze the cases relied on to sustain this claim, and we believe no court (except possibly the Alabama and North Carolina courts), has gone so far as to condemn the legislation challenged in the present case.

Justice Holmes in *Noble State Bank* v. *Haskell*, 219 U. S. 104, 31 Sup. Ct. 186, 55 L. Ed. 112, 32 L. R. A. (N. S.) 1064, Ann. Cas. 1912A, 487, thus defines police power:

"It may be said in a general way that the police power extends to all the great public needs. . . . It may be put forth in aid of what is sanctioned by usage, or held by the prevailing morality or strong and pre-

ponderant opinion to be greatly and immediately necessary to the public welfare.''

The supreme court of the United States has uniformly held that the adoption of the fourteenth amendment of the Constitution did not have the effect of denying to the state power to prescribe ''regulations to promote the peace, health, morals, education, and good order of the people.''

It may be said that the presence and use of intoxicating liquors at a place where a number of people gather for the enjoyment of social intercourse would have a tendency to disturb the peace and quiet of the people there assembled. It is not a stretch of the imagination to assume that one intoxicated man may, and indeed frequently does, annoy, disgust, and offend the moral sense of a large number of other people engaged in the discussion of serious and important social questions. The affectionate, or the bellicose, inebriate can do much to arouse the ire and invite the active resentment of his victims. And so the legislature deemed it wise to protect the members of social clubs, and thus promote the public peace by preventing the carrying of intoxicants into the clubrooms—to be kept or used there— to the discomfort of sober members and to the peril of the public peace. This thought was no doubt in the legislative mind, in so far at least as the statute might apply to the class of social clubs organized and conducted for the encouragement of social intercourse, and for the improvement and enjoyment of their fortunate members.

There was another thought which probably prompted the legislation in question. It is well known to those familiar with the enforcement of the laws against the sale of intoxicants that many schemes, artifices, and devices have been originated for the purpose of evading the law. Clubs and lodges have been organized for no other purpose than to sell intoxicating liquors. The

conscienceless promoters often select names for their club or lodge which suggest to the uninitiated that these organizations have no purpose other than to assist the moral and religious element of the community in every movement having for its purpose the moral welfare of the community.

To check the pernicious and cunning activities of the professional criminal—the man who once a blind tiger is always a blind tiger—the legislature adopted a broad classification to cover any and all social clubs. This was necessary to make the statute at all efficient. In this statute the limitation upon the use of liquor is confined to social clubs. The owner may carry it anywhere else and use it to any extent. There is no attempt to destroy the personal liberty of the owner to enjoy the seductive influence of liquor, or even to get drunk. So far as this statute is concerned one may own any amount of liquor, use it as he sees fit, and even carry it anywhere except to a social club or organization. Therefore it is said the statute denies the owner, as a club member, the equal protection of the laws.

There was a time, not long ago, when many intelligent and virtuous citizens of this state resented any interference by the legislature whereby it undertook to prohibit the sale of intoxicating liquors. Even laws submitting to the people of towns or counties the option of prohibiting the sale in any given town or county was indignantly denounced as efforts to deprive the dissenters of their natural and inalienable rights. There was a time, perhaps, when this sentiment represented the "prevailing morality" of many communities. We have traveled far since, until now it may be safely said that the "preponderant opinion," as well as "the prevailing morality" is willing and anxious to prohibit even the possession of alcoholic liquors as a crime against peace, morality, and good government. We do not think we yield to a clamorous

and unreasoning mob, when we indorse a law as within the police power of the state, when the supreme court of the United States says this power exists whenever the "preponderant opinion and prevailing morality" believes this law necessary to the public welfare.

We quote the words of an unknown writer as fairly representative of the present "prevailing morality" of the people of this state:

"Whiskey is a good thing in its place. There is nothing like it for preserving a man when he is dead. If you want to keep a dead man put him in whiskey; if you want to kill a live man put whiskey in him."

Is the writer a wag or a philosopher? This question will be answered by "dyed in the wool 'individualists' " but one way, but we apprehend that their answer would not be approved in a state-wide primary.

There is abundant authority, we think, for our view. We will now cite some of the cases which are in line with our ideas of the law. These cases are collated by the annotator of *Eidge* v. *Bessemer,* reported in 26 L. R. A. (N. S.) 395 *et seq.*:

"Thus, in *Selma* v. *Brewer,* 9 Cal. App. 70, 98 Pac. 61, the court said that it was of opinion that a municipal ordinance, declaring it unlawful for any person, firm, or corporation, company, club, or association to 'have, keep, possess, provide, or store' any spirituous, etc., liquors within a town, but permitting a licensed pharmacist to sell the same, taken as a whole, is consistent with the provisions of the Constitution authorizing any city to make and enforce police regulations not in conflict with general laws, and represents only a proper exercise of the power expressly vested by that instrument in cities, counties, towns, and townships.

"An ordinance prohibiting the owner or keeper of a retail grocery store, where meat, grain, fruit, provisions or other articles are exposed for sale, from keeping therein, or in any inner room adjacent thereto, or

on the premises connected therewith, any spirituous, etc., liquors, unless licensed by the city to retail the same, is warranted by charter authority to pass any by-law or requirement that shall appear requisite for the city, or for preserving peace, order, and good government. *Charleston* v. *Heisembrittle*, 2 McMul. 233. The court said that there could be no question that the restraints imposed by such ordinance were within the ordinary powers of legislation, there being nothing in the restrictions imposed by the Constitution of the state or United States restraining the legislature from passing a general law like that under consideration, or from granting power to do so to municipal corporations.

"So an ordinance providing that no intoxicating liquors shall be used or kept in any refreshment saloon or restaurant for any purpose whatever is valid, notwithstanding such liquors are not kept for sale, and the keeping thereof elsewhere is not restricted. State v. *Clark*, 28 N. H. 176, 61 Am. Dec. 611. See the quotation from this case in the dissenting opinion of McCLEL-LAN, J., in *Eidge* v. *Bessemer*.

"And it was held in *Cohen* v. *State*, 7 Ga. App. 5, 65 S. E. 1096 (one justice, however, dissenting), that on a prosecution for the violation of a law declaring it unlawful for any one to keep on hand at his place of business any intoxicating liquor, evidence as to the respondent's purpose in keeping it was properly excluded as irrevelant and immaterial.

"Thus it was held in *Easley* v. *Pegg*, 63 S. C. 98, 41 S. E. 18, that a municipal ordinance enacted under the general welfare clause of a municipal charter, prohibiting the storing or keeping possession of spirituous, etc., liquors, except as provided by the state dispensary law, was valid, it not being necessary that such liquor should be kept for an unlawful purpose; the offense being complete if there is a storing or keeping of liquor, which is contraband under the dispensary law.

"And in *Wright* v. *Macon,* 5 Ga. App. 750, 64. S. E. 807,where a municipal ordinance, declaring it unlawful for any club, corporation, or association of persons, or number of persons, whether incorporated or otherwise, to keep, or permit to be kept, in any room or place, or in any place connected directly or indirectly therewith, in which members of such club, corporation, association of persons, or number of persons, assembled, any alcoholic, spirituous, etc., liquors, under which it was sought to prosecute one who kept liquor owned by him and intended for his own personal use, in a locker of a club connected with lodgerooms of a fraternal society   to which he belonged, was held void, solely on the ground that the state had already regulated and licensed such clubs, the court said that 'but for the passage of the license tax by the state, there could be no question in our minds that . . . (such ordinance could have been adopted under the general welfare clause of its charter). It is evident that the general policy of the state in the passage of the general prohibition act of 1907 was to stop, or at least to decrease, the drinking of intoxicating liquor, and, the ordinance . . . now before us being in aid of that general policy, we think it could be extended to preventing the assembling of liquors at a place where drinking, instead of being decreased, would be increased, although the possession and property right in such liquors was legal, and the place at which such liquors were assembled was not a public place; and, although it is always to be borne in mind that delegated powers are to be strictly construed and reasonably exercised, we think the passage of the ordinance in question . . . is not an unreasonable exercise of police power, and is fully warranted by the general welfare clause.' "

We do not think that this act deprives members of social organizations of the equal protection of the law. It seems to us that the classification of the organiza-

tions which would come under the regulations adopted by the legislature is entirely reasonable. It may be said that business, benevolent, and other organizations which might be mentioned were not put under the statutory regulations, for the reason that ordinarily liquors are not carried into the places where such organizations assemble. There being no public necessity for prohibiting members of the organizations not mentioned in the statutes from carrying liquors to the meeting places, the legislature did not attempt to remedy a nonexistent evil.

Before leaving this subject, we venture to say that "social clubs," by this statute, are selected as the special favorites rather than as the victims of the law. While primarily the statute was enacted in the interest of the public welfare and to effectuate the purpose of the legislature to make the sale of intoxicating liquors more·difficult, yet it is conceivable that the immediate and direct result of the enforcement of the statute will be of special benefit to social clubs.

Lastly, it is contended that the act in question is unconstitutional, because it contravenes section 71 of our Constitution. All questions of this kind are foreclosed by the decision in *City of Jackson* v. *State*, 102 Miss. 663, 59 So. 873. If the object of prohibition of the sale of intoxicating liquors is not to prevent, as far as may be, the drinking of such liquors, then it is difficult to justify the laws prohibiting the sale. Of course the typical public saloon is demoralizing, but there would be no practical difficulties in the way of so regulating the saloon as to minimize all of the evils which flow from the·saloon, except the evils which flow from the drinking of intoxicating beverages. If it is not a menace to the health, morals, welfare, and peace of the public for men and women to drink alcholic liquors, it would seem that the public could have no interest in prohibiting the sale. The ultimate purpose

and end of prohibition is to prevent the use of liquor as a beverage. This ultimate end is approached step by step, and when the preponderant and prevaling morality of the nation believes that the public welfare demands the final step, the way will be found to accomplish the end.

The judgment of the trial court sustaining the demurrer to the affidavit is reversed, and the cause remanded for trial on its merits.

*Reversed and remanded.*